# AMERICAN SECURITY AND TRUST CO. *v.* LYON.

DAMAGES; DAMNUM ABSQUE INJURIA; NEGLIGENCE.

1. Whether a man who places unusual quantities of earth or water
   upon his own land with proper precaution for its confinement,
   notwithstanding which it escapes and invades his neighbor's land,
   to the latter's damage, is liable to his neighbor, and, if so, how
   far, *quære.*
2. Where a man in grading and leveling his land fills with twelve or
   fifteen hundred cubic yards of loose earth a ravine thereon, the
   mouth of which opens upon a creek, the bed of which is owned
   by his neighbor and in which the latter has valuable deposits
   of building sand, without taking proper precaution, or any pre-
   caution, to prevent the loose earth from being washed by the
   rain upon the sand beds, although no unusual or extraordinary
   precaution is required for the purpose, he is liable to his neigh-
   bor for the resulting damage to the sand beds; at least reasonable
   care and prudence being required under the circumstances.

No. 1245.  Submitted December 4, 1902.  Decided January 20, 1903.

HEARING on an appeal by the defendant from a judgment
of the Supreme Court of the District of Columbia upon the
verdict of a jury in an action to recover damages for injury
to deposits of building sand upon the bed of Rock Creek.
                                 *Affirmed.*

The COURT in the opinion stated the case as follows:

The appellee, Evan Lyons, was the owner of a narrow tract of land in the District of Columbia adjacent to the city of Washington, wherein was included a part of the bed of Rock Creek about three-quarters of a mile in extent. A dam constructed across the creek formed a pond from which water was carried by a mill-race to a mill near the south end of the tract. In this pond a considerable amount of sand useful for building purposes had accumulated from year to year prior to the year 1888, from the sale of which the appellee derived considerable revenue.

The appellee's ownership extended only two or three feet beyond the west side of the creek. Adjoining and beyond him to the west and northwest and extending some distance above the dam and pond was a tract of land owned by John W. Thompson, hilly and irregular in its nature, and traversed by two ravines, which received drainage from the surrounding slopes and opened upon the creek. One of these ravines, and the larger of them, near to which was a disused quarry, opened upon the creek only a few yards above the dam. It ran back about one thousand feet from the creek, was of the average width of about four hundred and fifty feet and about sixty feet in depth at the middle of it, and had no regular flow of water in it beyond that from a small spring inclosed in a sunken barrel. The other ravine carried a small stream of water which flowed into the creek.

In the year 1888 Mr. Thompson caused his land to be graded for use as building lots in view of the extension of the city of Washington. The work of grading was commenced about the 20th of February in that year, and lasted about eight months. It is stated to have been done by an experienced contractor under the superintendence of skillful engineers. In the course of it loose earth amounting to about twelve hundred or fifteen hundred cubic yards was put into the ravine where the spring was, the spring being first inclosed and the water from it being carried by pipes to the face of the hill, whence it was discharged into the creek.

The purpose was to fill the ravine and to bring it to a level with the adjacent land.    Earth was also. deposited near the more northern ravine, but not in it.

During the progress of the work light rains fell, which took up the loose earth in solution and carried it down into the creek, where it was deposited in large quantity as mud upon the appellee's sand beds, with the result that the sand beds were greatly injured and their usefulness to the appellee almost destroyed.    The appellee thereupon instituted suit at common law in the Supreme Court of the District to recover damages for the injury.

The original declaration which was filed on February 13, 1891, alleged negligence on the part of the defendant Thompson in the matter of the filling of the ravine.    Upon this declaration an abortive trial seems to have been had.    Subsequently, on December 1, 1898, by leave of the court, the declaration was amended by the addition of a second count from which the allegation of negligence was omitted.    To this second count there was a demurrer, which was overruled, and then there was the general issue pleaded to the whole declaration and to each count severally, and the parties went to trial.

At the trial, after testimony had been adduced on both sides, the presiding justice, being of opinion that the plaintiff could not recover, unless there was negligence shown on the part of the defendant, directed the jury to return a verdict for the defendant on the second count; but, being also of opinion that there was sufficient evidence to go to the jury upon the question of negligence on the part of the defendant, submitted the case to the jury upon the first count of the declaration.    Before the trial, however, John W. Thompson had died; and the present appellant, the American Security and Trust Company, his executor, was substituted in his place.

The jury returned a verdict in favor of the plaintiff, upon which there was judgment; and the defendant has appealed. The ground of appeal is that there was no evidence in the case tending to show negligence on the part of Thompson;

and that, therefore, the jury should have been instructed, as prayed by the defendant, to return a verdict in favor of the defendant.

*Mr. A. A. Birney* and *Mr. Henry F. Woodard* for the appellant:

1. It was necessary that plaintiff should prove negligence in order to recover. To permit plaintiff to recover without such proof would deny to the owner of the higher land his natural right to plow it or otherwise to disturb its surface, and subject it to an intolerable servitude in favor of the lower proprietor. The grading of the upper land was not only lawful, but of public benefit, and the testimony of the plaintiff shows the damage to have been the necessary and inevitable consequence of such lawful use. This is *damnum absque injuria*. *Morgan v. Cox,* 22 Mo. 371; 1 Thompson on Neg. (1st ed.) 239; *Panton v. Holland,* 17 Johns. 93; *Platt v. Johnson,* 15 Johns. 213. Damage only is no test of liability; if no legal right is violated there is no wrong. 1 Smith Lead. Cas. 514; *Booth v. Rome, etc., RR. Co.,* 140 N. Y. 267; *Brooks v. Cedar Brook, etc., Co.* (Me.), 7 L. R. A. 461; *Trinity, etc., RR. Co. v. Meadows* (Tex.), 3 L. R. A. 565; *Barnard v. Shirley* (Ind.), 24 L. R. A. 568; *Penn. Coal Co. v. Sanderson,* 113 Pa. St. 126; *S. C.,* 5 Am. & Eng. Encyc. (1st ed.) 70; *S. P., Williams v. Gale,* 3 H. & J. 231; *Clark v. Foot,* 8 Johns. 421; *Livingston v. Adams,* 8 Cow. 175. *Rylands v. Fletcher,* 3 L. R. 330, may be cited against this case, but the doctrine of *Rylands v. Fletcher,* unless as explained and limited by the late English decisions of *Cumberland Iron Co. v. Kenyon,* L. R. Ch. Div. 783, and *Nichols v. Marsland,* 10 Exch. 255, and others, is not law in the United States, though for a time some courts gave adherence to it. Thompson on Neg. (1st ed.) 86, 96, 148; *Penn. Coal Co. v. Sanderson, supra.* And even *Rylands v. Fletcher* asserts the doctrine for which we contend in this case. There is no liability for the collection and percolation of rain water caused by the natural use of de-

fendant's land.    *Wilson* v. *Waddell,* 2 App. Cas. (Eng.) 95.
See also *Gannon* v. *Hargadon,* 10 Allen (Mass.), 106 ; *Gilmore* v. *Driscoll,* 122 Mass. 199 ; *Dixon* v. *Wilkinson,* 2 McArthur, 425 ; *Ashby* v. *White,* 1 Smith Lead. Cas. 517 ; *Merrifield* v. *Worcester,* 110 Mass. 216 ; *Barnard* v. *Newton,* 154
Mass. 255 ; 1 Lead. Cas. 519 ; 1 Smith Lead. Cas. 520 ; *Gannon* v. *Hargadon,* 10 Allen (Mass.), 106 ; *Helfrech* v. *Catonville Water Co.* (Md.), 13 L. R. A. 117 ; *Parks* v. *Newburyport,* 10 Gray (Mass.), 28 ; *Ashley* v. *Wolcott,* 11 Cush.
(Mass.) 192 ; *Flagg* v. *Worcester,* 79 Mass. 601 ; Angell on
Water-Courses, Sec. 108d.    The doctrine laid down by this
court in *Frisbie* v. *Cowen,* 18 App. D. C. 381, is inapplicable, for in the case at bar there is not a turning of accumulated water upon lands of a lower proprietor, but only the
flowing upon the lower proprietor's lands of rain water as
it has always been accustomed to flow,— " a natural flow of
surface water, arising from natural causes only, and flowing
without artificial means."    All the cases recognize the distinction.    Note to *Gray* v. *McWilliams,* 21 L. R. A. 595.

2. There was no evidence of negligence and a verdict for
defendant should have been directed.    It is only when the
evidence is such that reasonable men may fairly differ as to
the deductions to be drawn therefrom, that the determination of the fact of negligence should be submitted to a jury.
*District of Columbia* v. *Moulton,* 182 U. S. 576–579.    It
was incumbent on the plaintiff to show the omission to do
something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human
affairs would do, or the doing of something which a prudent
and reasonable man would not do.    *Blyth* v. *Birmingham
Water Works,* 11 Exch. 781 ; *The Nitro Glycerine Case,* 15
Wall. 524, 536.    Of what negligence was Mr. Thompson
guilty ?    He employed to lay out the work civil engineers
whose competency is unquestioned ; a contractor to work
under their direction whose experience was great, and whose
skill is not impugned, and no hint is given of defective work.
There was then no positive act of negligence and there was
there no evidence of an omission of any reasonable precau-

tion.   No witness suggested a precaution which would have been effectual to prevent the damage.   It is error to submit to the jury the question whether the failure to take certain precautions was negligence, in the absence of any evidence that such precautions were usual under the circumstances, or that it would have been prudent to take them.   *Hall* v. *Murdock,* 119 Mich. 389.   There was no duty on Mr. Thompson to build a wall to intercept the drainage from his land when he ploughed it and filled its hollows, or to lay pipes or dig gutters to carry the rain water where it was unaccustomed to go; or to establish a filtration plant to cleanse it of impurities before it should reach plaintiff's sand beds.   *Wheatley* v. *Baugh,* 1 Casey, 532.   In grading his land he was making a reasonable use of his property; he did it through skillful agents and in a reasonable way.   In this he was exercising his legal right, and was guiltless of legal wrong. To require that before exercising this legal right he should take any of the preventive steps above suggested to prevent damage to the lower proprietor, is to deny such legal right and impose on his land an unnatural servitude.   *Gilmore* v. *Driscoll,* 122 Mass. 199.

*Mr. Henry E. Davis* and *Mr. Charles Cowles Tucker* for the appellee:

1. It was not necessary for the plaintiff to show negligence.   *Lawson* v. *Price,* 45 Md. 123 (opinion by Alvey, J.), and cases cited.   And see also cases cited in *Frisbie* v. *Cowen,* 18 App. D. C. 381; *Cahill* v. *Eastman,* 18 Minn. 324, and cases cited.   See also *Hay* v. *Cohoes Co.,* 2 N. Y. 159, and cases cited; *Pixley* v. *Clark,* 35 N. Y. 529, and cases cited; *Ball* v. *Nye,* 99 Mass. 582.   The filling of the ravine on the defendant's land, the mouth of which opened on the plaintiff's sand beds, with from 1,200 to 1,500 cubic yards of loose earth, without protecting the mouth of the ravine by any barrier or obstruction to prevent washing upon such sand beds of the loose earth when it rained, necessarily tended to injure the appellee in his pre-existing rights of property.

*Ball* v. *Nye,* 99 Mass. 582, as cited in *Gilmore* v. *Driscoll,* 22 Mass. 203; Lord Holt in *Tenant* v. *Goldwin,* 2 Ld. Raym. 1089; *S. C.,* 1 Salk. 360. Almost all of the cases cited in appellant's brief could, if necessary, be distinguished from the case at bar by the fact that in them the defendants — railroad companies, coalmining companies, municipal corporations, etc. — had legislative authority, by their charters or otherwise, to make the improvements on their own land · which resulted in injury to the adjoining riparian owners or the proprietors of adjacent lands. In this class of cases, it is said, negligence must be charged and proved, but in that class of cases in which such improvements do not have legislative sanction, negligence need not be 'shown. This distinction is clearly made by Denio, J., in the case of *Bellinger* v. *New York Central RR.,* 23 N. Y. 47, where the rights of riparian owners were involved, and in the case of *Radcliffe, Executor,* v. *The Mayor of Brooklyn,* 4 N. Y. 195, where it was decided that where persons are authorized by the legislature to perform acts in which the public are interested, such as grading, leveling, and improving streets and highways and the like, and they act with proper care and prudence, they are not answerable for the consequential damages which may be sustained by those who own lands bounded by the street or highway.

It may be here remarked, however, that the latter case would seem to be at variance with the case of *Dana* v. *Rock Creek Ry.,* 7 App. D. C. 482, in which this court held that where a railroad authorized by law to lay its tracks along a certain street, finding the established grade too steep for its purposes, lowers the grade and thereby renders the access of an owner of land abutting on the street difficult or impossible, the company is liable to the owner for compensation for the injury, notwithstanding that it acted under authority granted by the municipality.

2. But, after all, the question whether it was necessary for the plaintiff to show negligence on the part of the appellant's testator would seem to be a moot question, for there is cer-

tainly in the record testimony sufficient to show acts of omission on his part amounting to negligence. The jury were of this opinion. So also was the trial court, for it not only allowed the case to go to the jury, but overruled the appellant's motion for a new trial. We understand the contention of the appellant to be that Thompson was not charged with the duty of conducting the operations on his own land so as to prevent injury to his neighbor, the appellee, and that if any precautions were necessary to prevent injury they should have been taken by the appellee and not by Mr. Thompson. But see *Pixley* v. *Clark,* 35 N. Y. 520.

Mr. Justice MORRIS delivered the opinion of the Court:

The arguments in this case have been conducted with marked ability and industrious research into adjudicated cases upon the question of *damnum absque injuria* and how far a man may use his own property without liability to other persons for damage consequential upon such use. We do not deem it necessary to follow counsel into this interesting investigation. The case might have been different if the second count of the declaration had been permitted to stand, and the verdict had been rendered upon it or upon both counts combined. But the second count has been eliminated from the case by the direction of the trial court to the jury to return a verdict for the defendant on that count. The appellee, alone, if any one, is aggrieved by that ruling; and he does not complain of it. While the argument on his part proceeds in great measure upon the assumption that the ruling was erroneous, he has taken no appeal, and there has been no occasion for him to appeal. With this second count eliminated, the issue between the parties was resolved into the question whether there was negligence on the part of the defendant Thompson in the doing an act, in itself lawful, upon his own property, whereby the appellee was injured. We understand it to be conceded on the part of the appellant, and it is undoubtedly the law, that if there was such

negligence the plaintiff was entitled to recover. The contention is that there was no evidence of any such negligence.

The rule applies here, as in many other cases, that, while a man may lawfully do what he pleases with his own property, he may not use it in such manner as to injure his neighbor. It is true that there is *damnum absque injuria,* damage for which no legal redress can be claimed. Constantly in the course of human events there are acts done by our neighbors in the enjoyment of their rights of property which diminish and may greatly interfere with our enjoyment of our property. If a man building upon his own city lot thereby cuts off the view or darkens the lights of his neighbor's house, the latter cannot reasonably complain. If a man clears his land of trees and ploughs up the ground for cultivation, and thereby interferes with the flow of water upon his neighbor's land, the latter has no redress. Every one, in the acquisition and use of his own holdings, must be held to have anticipated the ordinary use by others of their lands; and from such ordinary use consequential damage is not to be inferred. But when one places some extraordinary or unusual construction on his own land, which could not reasonably have been anticipated by his neighbors, when he builds a great reservoir of water, or fills up a great ravine with earth, all of which, of course, he may lawfully do, it behooves him to take proper precautions to prevent the water or the earth from overflowing upon his neighbor's land and injuring his neighbor's right. In the use of his own he must not invade his neighbor's property; and it would undoubtedly be an invasion of his neighbor's property if he placed unusual quantities of earth or water upon his own land without proper precaution for their confinement, and allowed them to escape upon his neighbor's land and to injure him. Whether he would be liable, and how far, with such precautions, it is unnecessary here to decide, for the parties have made the issue of negligence, and upon that issue the case was determined by the trial court. The only question for us is, whether the ruling of the trial court was correct that

TRUST CO. *v.* LYON 131

there was sufficient evidence to be submitted to the jury upon the question of the negligence of the defendant.

We think the court was right in that ruling, and that it requires no very minute examination of the testimony in the case to show that there was ample evidence to go to the jury upon the question involved.

One witness for the plaintiff testified " that no barricades were erected to prevent the water or mud from coming into the creek on the Thompson side, except that some trees were cut down and left to lie there, some on the edge of the creek, and some lengthwise towards the creek, but they did not prevent the water or the mud coming in." The plaintiff himself, as a witness on his own behalf, being questioned with reference to testimony previously given by the contractor who had done the work for Thompson to the effect that he had dug trenches in certain places in order to carry off the water which washed down the earth, testified " that the work had been going on for some time before these trenches were dug;" and that he did not think that these trenches were dug until after he had made complaint of the damage which he was sustaining. A witness for the defendant, one of the engineers employed by Thompson, testified that after the work had been in progress for some time, timber crib-work was built, which stopped very materially the movement of solid material, but could not stop the wash of mud in solution; and that this crib-work was not begun until the fill of earth was three or four feet in height near the edge of the creek. The contractor, when called as a witness on behalf of the defendant, would seem to show that the previous witness was at least partly in error. He testified that the crib-work referred to was put in on the east side of the creek and not on the west or Thompson side; that the plaintiff frequently complained to the witness about the washing of the earth; and that nothing was done, therefore, to prevent such washing, because there had been no plan to put up works.

Assuredly there was ample testimony here to go to the jury to show that no proper precaution, indeed, no precaution whatever, had been taken to prevent the vast quantity of loose

earth deposited by the defendant in the ravine from escaping upon the plaintiff's pond in the shape of mud and destroying his property.    At least reasonable care and prudence were demanded of the defendant.    No man has the right to heap up loose earth or material upon his own land in such manner that, if proper precautions are not taken to confine it, it must necessarily escape upon the land of another.    The testimony in the case would tend to show that no unusual or extraordinary precaution was required for the purpose, but that much of the mischief was done before any precaution whatever was taken.

We find no error in the ruling of the trial court; and the judgment appealed from must, therefore, be *affirmed, with costs.    And it is so ordered.*