JOSEPH SHU FUNG AND CATHERINE REIN-
HARDT FUNG v. CHARLOTTE M. CHANG.

No. 4220.

JULY 26, 1963.

TSUKIYAMA, C.J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY LEWIS, J.

By the judgment below plaintiffs-appellees, Joseph and
Catherine Fung, were awarded damages for property
damage and personal injuries sustained in 1957 when a
retaining wall on property of the adjoining owner, defend-
ant-appellant Charlotte M. Chang, gave way and rocks
and debris descended upon their property below. A co-
defendant, Robert Chang, though held liable jointly and
severally with Charlotte M. Chang, has not appealed. Ap-

pellant's position is that the liability was solely that of her co-defendant.

At the time of the collapse of the wall appellant was divorced from Robert Chang, and was the sole owner of the property, which had been deeded to her prior to the divorce. In 1953, when the wall was built and backfilled to create a level lot for the Changs, they were husband and wife and owned the property as tenants by the entirety.

It is undisputed that appellant wanted the lot made level in preparation for the building of a new home afterward constructed. She testified: "I wanted it as level as possible for the children." It also is undisputed that she knew this required the construction of a retaining wall.

Appellant further testified that: "I had no idea when I said I wanted a level lot for the children, how high it was going to be." However, as a frequent visitor to the site she observed the construction of the wall and backfilling thereof. Thus she knew that the level of the Chang property was being placed eighteen feet above the level of the adjoining Fung property. She never made any objection to the height of the wall.

In appellant's own words she "left the details of construction" to her husband and one Norman Mundy. The latter drew a plan for the wall. According to this plan, the Chang wall was to be toed in behind a wall previously built on the Fung property; the footing was to be placed three feet below the top of the Fung wall, which would be one foot above the Fung ground level; the height of the wall was to be fifteen feet above the top of the Fung wall.

There was evidence that the excavation for the footing should have been at least three feet below the Fung ground level, and the width of the footing, shown on the plan as a minimum of thirty inches, should have been four and a half inches for every foot of height. This evidence was

given by a structural engineer called by plaintiffs-appellees. He testified that the required wall width would vary with soil conditions; a mucky soil, such as the adobe soil in this vicinity, required the greater width of footing to which he testified.

Mr. Mundy, who drew the plan for the wall in question, was not an engineer. He was a friend of defendant Robert Chang with experience in stone wall work. No contractor was employed. Robert Chang built the wall himself on week ends, superintending the work of masons who worked under him at the contracting firm where he then was employed as a general construction superintendent. This firm "specialized in only masonry work" including stone walls such as the one he built. Before he built this wall he had supervised the construction of quite a number of retaining walls, but on cross-examination as to the principal ones he conceded they were planned by engineers. It does not appear that he had had any experience in designing walls. His experience was in building walls designed by others.

As to the work done, Robert Chang testified that he commenced building the wall at the street where the Chang property abutted that of another owner, Kau; that where the Kau property joined the Fung property, hereinafter referred to as the "Kau-Fung corner" or the "corner," the wall was eighteen feet high and was built with a footing seven feet wide at a depth of three feet below the ground level of the Fung property; that this was "exceptional in there. We put in a lot because we knew that would be the section bearing the brunt of the pressure"; that at the point of beginning on the street the wall was only two and a half feet high; that as the work progressed toward the aforesaid corner the height of the wall increased; that the footing as built varied in width, increasing with the height of the wall; that the "minimum width" along the

Fung boundary was "roughly five feet"; that the excavation for the footing varied in depth according to where the workers hit solid rock; that when they hit solid rock they built on it; that the thirty-inch minimum footing indicated on the plan did not mean that was sufficient for the height of wall indicated; that it was the intention of the plan that he (Robert Chang) use his experience and judgment in determining the width of the footing in relation to the height; that he applied the same principles in building this wall as had been applied in constructing others where he had been employed as supervisor. He further testified that the fill directly behind the wall consisted of gravel and rocks, in other words the adobe soil natural in that vicinity was not directly behind the wall.

However, according to the contractor who built the wall that replaced the collapsed wall, the footing was only two to three feet wide at a point along the Fung boundary[1] where he was able to observe it after the collapse, thirty-five feet from the Kau-Fung corner, and the footing was above the ground level of the Fung lot; the height of the wall was eighteen feet above the ground level; and the backfill material consisted of boulders, tree stumps, beer cans, and a "lot of soil on top," which he said was the adobe soil of the vicinity. A picture taken by plaintiff Joseph Fung during construction showed that the footing was placed considerably above the ground level of the Fung lot.

Defendant Robert Chang put on an expert witness, a licensed engineer with experience in structural engineering and investigation of soils, who testified that adobe soil expands from ten per cent to two times in volume when wet, depending on the type of adobe. He made a test

---

[1] The wall had collapsed between this point and the corner, also a distance of ten feet from the corner along the Kau boundary.

demonstrating a sixty per cent expansion of a sample of adobe soil taken in the vicinity in question. He testified: "One of the biggest reasons for a collapse would be * * * the expansion of the soil * * *"; that "the usual retaining wall is based on a back fill of a nonexpansive nature, something like sand * * * you usually compute your pressure on that basis." Speaking of the hillside in this section he said "there is a slow movement downhill" and he thought this was one of the causes for the collapse of the wall.

This witness further testified that the walls in the vicinity "all" were built in about the manner Robert Chang had testified that this one was built; that they were the type of wall constructed by a contractor without an engineer having designed it. However, other testimony showed that it was the policy of the City and County Building Department[2] that a licensed architect or engineer must sign the plans for a wall more than five feet in height. The height of the other walls to which the witness referred was not shown and presumably they were not of comparable height. In any event, negligence in the construction of other walls is of no significance here.

It is well settled that a landowner who grades and fills his land has the duty of taking proper precautions to

---

[2] While there are no findings on the point the evidence shows that the work was started "approximately" in June, 1953, and that after the work was started Robert Chang obtained a building permit which he posted on the property. The only record that could be produced from the building superintendent's office was an index showing a permit issued to Robert Chang and wife in July, 1953, endorsed in handwriting "voided July 3, 1953 (false)." There is nothing in the record to explain the notation and nothing to show the Changs were notified of the voiding of the permit except that it was testified "through practice usually there must have been a letter of communication to the owner, I guess." None of the papers involved could be found.

There also was evidence of an inspection trip made by two men after a complaint was received. This must have been in September, 1953, or later, as one of them did not become a building inspector until September, 1953. At the time of this trip it was found that the work was 90% complete.

154

prevent the soil and other fill material from spilling over onto the land of an adjoining owner. *American Security & Trust Co.* v. *Lyon,* 21 App. D.C. 122; *Chesapeake & Ohio Ry.* v. *Weddington,* 231 Ky. 745, 22 S.W.2d 131; *Hutchinson and Rourke* v. *Schimmelfeder,* 40 Pa. St. 396; *Sullivan* v. *Gruskin,* 115 Conn. 721, 161 Atl. 795; *Braisted* v. *Brooklyn & R.B.R.R.,* 46 App. Div. 204, 61 N.Y. Supp. 674. Whether a landowner has any greater duty than this we need not decide. See *Beck* v. *Bel Air Properties, Inc.,* 134 Cal. App. 2d 834, 286 P.2d 503.

The trial court found *inter alia*:

"4. The section of the wall abutting plaintiffs' property was approximately eighteen feet above the ground level of plaintiffs' lot.

"5. The wall's footing adjacent to plaintiffs' premises was not set below the ground level of plaintiffs' lot in accordance with accepted engineering principles, but defendants instead improperly relied upon plaintiffs' pre-existing four-foot high wall for support and anchorage of defendants' wall.

"6. Defendants backfilled their lot to the top of their wall with large boulders and adobe soil. Adobe is highly expansive when wet and is not a proper backfill material."

Finding 4 correctly states the height of the wall in the area where the collapse occurred. As to Findings 5 and 6, though other findings could have been made on the basis of Robert Chang's testimony these findings are supported by the evidence and accordingly will not be disturbed. In any event, the findings are not under attack except in the inclusion therein of appellant as well as her co-defendant Robert Chang. The question then is the responsibility of appellant for the violation of accepted engineering principles in the construction of the wall.

At no time was there a design for the wall made or

approved by an architect or engineer. There should have been for a project of this nature—a retaining wall the height of a two-story building that must withstand the pressure of the backfill under the particular soil conditions obtaining. Appellant saw how high the wall was going and could have ascertained it at the inception. It was shown on the plan.

Appellees contend that the work was inherently dangerous and that appellant had a nondelegable duty with respect to the manner in which it was done. We need not go that far. Appellant at least had the duty of seeing to it that the work was designed by a qualified person and put into competent hands. 27 Am. Jur., *Independent Contractors,* § 28; Annot., 8 A.L.R.2d 267; *cf., Burke* v. *Ireland,* 166 N.Y. 305, 59 N.E. 914; *Fox* v. *Ireland,* 46 App. Div. 541, 61 N.Y. Supp. 1061.

Whatever may be said as to Robert Chang's competence to execute the work, it was not to be expected that he could take the place of a qualified professional man in designing it. He himself recognized that Mr. Mundy's plan was inadequate and left much to his judgment. Appellant's reliance on her husband and his friend was misplaced. The trial court did not err in finding and concluding that appellant was liable for the damage consequent upon the faulty design. While there perhaps should have been a specific finding as to the duty of appellant in the premises, considering the evidence and the findings and conclusions as a whole we see no substantial prejudice or basis for reversal. H.R.C.P., Rule 61; *Rossiter* v. *Vogel,* 148 F.2d 292 (2d Cir.).

We have considered appellant's statement of the questions involved, which reads:

"1. Is a wife liable for her husband's tort committed during coverture where the evidence shows (a) that she did not actively participate in its commission; and

(b) that she had no notice or knowledge thereof in time to take corrective or preventive measures to avoid the damage caused thereby?

"2. Is a wife liable under the theory of respondeat superior for her husband's tort committed in constructing a retaining wall where there is no evidence that she appointed or authorized him to construct the wall aliunde: (a) joint ownership by husband wife of the land on which he built the wall; (b) their marriage relationship; (c) her consent and approval to his making such an improvement upon their land; and (d) her innocent enjoyment of the benefits of the improvement after it is made?"

Appellant is in error in so stating the questions involved. The question is rather:

It being the duty of a landowner to take proper precautions when grading and filling his land, is a wife who is joint owner of the land with her husband as tenant by the entirety and consents to and approves the making of such improvements, immunized from the performance of the aforesaid duty by entrusting everything to her husband?

The only apposite cases cited by appellant are those involving negligent construction by the husband on land owned in whole or in part by the wife. In *Jansen* v. *Varnum*, 89 Ill. 100 (1878), the court said "there is nothing to show she [the wife] directed, sanctioned, or even knew of the acts complained of by appellees." That case is not in point. Nor is *Koehler* v. *Miller*, 21 Ill. App. 557 (1886), where the property involved was conveyed before the Married Women's Laws of 1861 and was subject to the rule that the husband was the possessor of property owned by the wife. The court held that by virtue thereof the acts of the husband "would be referable to his possession and absolute control of the premises given him by the law

* * * and not to any presumed agency for his wife."

*Simmons* v. *Brown,* 5 R.I. 299 (1858), was a case in which the court did not deem material the location of the dam complained of, and besides, the premises were in the possession of the husband. The case is not in point. In *Hoar* v. *Merritt,* 62 Mich. 386, 29 N.W. 15 (1886), the court said that under no view of the facts could the wife be made liable, that she was merely the owner of the land and had nothing to do with the building. However, the case is not apposite as the question at issue here was not presented—an architect was employed, there was no defect in the plan, and competent workmen were hired.

*Wingrove* v. *Leney,* 312 Mass. 683, 45 N.E.2d 837 (1942), involved a tenancy by the entirety. A tenant suffered injuries by reason of negligence in making repairs to steps. It was held that the husband and not the wife bore the relation of landlord to the tenant and was solely responsible for any breach of duty as such. This holding was based on the Massachusetts rule that in a case of tenancy by the entirety the husband is in possession to the exclusion of the wife. That is not the modern rule nor the one that obtains under R.L.H. 1955, § 325-1. 26 Am. Jur., *Husband and Wife,* §§ 67, 78; Annot., 141 A.L.R. 179 at 202; 41 C.J.S., *Husband and Wife,* § 34d at 463.

Thus while appellant at common law would have had a perfect defense as a *feme covert,*[3] the position of a wife today is such as to require her to bear her responsibility as a landowner.

Affirmed.

*Morris P. Skinner* (*Skinner, Bennett & Ornelles* of counsel) for appellant.

*Frank D. Padgett* (*Robertson, Castle & Anthony* of counsel) for appellee.

---

[3] *People* v. *Townsend,* 3 Hill (N.Y.) 479, 482.