### City of Joliet v. Peter Fox.

#### Gen. No. 4,862.

DAMAGES—*when proof of, essential.* Where damages are capable of computation in dollars and cents, direct tangible proof thereof must be offered.

Action on the case. Appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the April term, 1907. Reversed and remanded. Opinion filed August 6, 1907.

ROBERT E. HALEY, for appellant.

DONAHOE, MCNAUGHTON & MCKEOWN, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

This was an action on the case brought in the Circuit Court of Will county by Peter Fox against the city of Joliet, to recover damages for injuries to certain real estate, for a loss of rentals thereof, for deprivation of the enjoyment of a home, and for sickness and death of a certain member of his family.

The declaration in substance alleged that appellee was lawfully possessed of certain lands and premises upon which was a house in which he, with his family, resided, situated in the city of Joliet; and that a slough drain flowed across said premises, into which appellant wrongfully permitted sewerage, offal, filth, etc., to be emptied at a point in the stream above ap-

City of Joliet v. Fox.

pellee's premises, by reason of which offensive smells were emitted therefrom, whereby said premises became unhealthful, his family sick and three of them died, thereby causing appellee to lay out large sums of money; and it averred that appellee and his family were greatly injured and damaged in the use and enjoyment of said lands and dwelling house, and the loss of rentals. There was a plea of not guilty, a trial by a jury resulting in a verdict for $1,200 for appellee; a motion for a new trial was overruled, judgment was entered on the verdict, and this appeal therefrom is prosecuted by defendant.

The evidence shows that this drain was originally a natural watercourse flowing through the city of Joliet and across one corner of appellee's premises and under his house. It was useful to carry away storm waters and was deepened by the city, a stone wall being built on either side, making it four or five feet wide and of about the same depth. At the time it was walled in, it was intended that it should carry only storm waters. In 1892, the city built in Cass street a short sewer having the usual house connections, which emptied into this drain. In 1895, a fifteen-inch sewer, three-fourths of a mile long, was constructed in Cass street, and later the sewers from other streets were connected with this, until the sewers of quite an area emptied into this drain through the Cass street sewer. The territory thus drained was thickly populated, most of the buildings having sewer connections, so that much offensive matter passed into the drain at a point in the stream above appellee's premises. The city later caused a wooden covering to be placed over that portion flowing through appellee's premises, and this, rotting away, was replaced by stone flagging cemented together. It further appears from the evidence that originally this stream, which was fed by springs, was clear; that fish lived and watercress grew in it; that the water was used for scrubbing and washing, and that the city used it

for fire purposes; that there was no odor to it; but that after the sewerage was turned in, its condition was foul and offensive, that bad odors and gases arose from it and steam and vapor in the evening.

Appellee testified that he lived with his family on the premises in question nineteen years and eight months and left it on account of sickness in his family and the bad odor of the drain; that of late years carpets and clothing had a bad smell in the house, and that it was damp and wall paper and clothing would mould. Dr. Peairs testified that he visited the house forty or fifty times, and that there was always a peculiar odor of stifling sewer gas through the whole house, and that it was worse in the cellar. A number of other witnesses testified that the drain emitted bad odors and was offensive.

The court permitted appellee to show, over the objection of appellant, the sickness and death of his three daughters within fifteen months while he lived in the house, remarking that the evidence needed a little more with it and that he expected they would offer something more, that there should be some evidence to show what the sickness was; if they were sick from some other cause, that had nothing to do with the suit. Mrs. Hays testified, over the objection of appellant, that she had known the three girls who died, all their lives; that they seemed to be strong, healthy girls, and that she had never known them to be sick until their last illness. There was no evidence showing of what diseases the girls died, nor that such diseases and deaths were caused by the condition of the drain. The court should have sustained appellant's objection to the evidence, or upon failure of appellee to furnish the proof suggested, should have withdrawn the evidence on the subject from the consideration of the jury.

The evidence shows that appellee called a physician who testified that he visited the house forty or fifty times, but did not testify as to the value of his services. It also tends to show that appellee's property sus-

tained some physical impairment; that he was put to some expense in making a change of residence, suffered a loss of rentals and was deprived of the comfortable enjoyment of a home, all by reason of the condition of the drain. Each of these elements of damage, except as to the deprivation of the comfortable home, was susceptible of proof in dollars and cents, but no such proof was offered. Under this state of the evidence, the court, at the instance of appellee, gave to the jury the following instruction: "If you find the defendant guilty, then in estimating plaintiff's damages, the actual amount thereof need not in this case be established by testimony, but it is left to the sound judgment and discretion of the jury, in view of all the evidence in the case." Appellee cites as authority therefor Gempp v. Bassham, 60 Ill. App. 84, wherein it was said: "Where the injury is to physical comfort and results in deprivation of the comfortable enjoyments of a home  *  *  *  The amount in dollars necessary to compensate the plaintiff in such cases is not to be estimated by witness or the actual amount thereof established by testimony or calculated by any arithmetical rule. It must be left to the sound judgment, experience and discretion of the jury to fix the amount in view of the facts of each particular case." This instruction, under the authority relied on, is applicable to only one element of damage which the evidence tended to establish, and is clearly erroneous to all elements hereinbefore indicated as susceptible of proof in dollars and cents. It was incumbent on appellee to afford the jury some tangible means of arriving at the amount of damages he had suffered, and not to open to them, as did this instruction, the field of speculation and conjecture. The instruction should have defined the rules of law governing the measure of recovery for every element of damage claimed by appellee and supported by the proof. No other instruction gave the law governing the measure of damages.

For the error in the admission of incompetent evidence and in defining the measure of recovery, the judgment is reversed and the cause remanded.

*Reversed and remanded.*