## Peter Fox, Appellee, v. City of Joliet, Appellant.

## Gen. No. 5,081.

1. EVIDENCE—*when expert testimony competent*. *Held*, that expert testimony is competent upon the question as to the possible effects upon the health of the plaintiff and his family resulting from the breathing of noxious odors proceeding from a drain.

2. TORTS—*when municipality liable for converting running stream into public sewer*. If a running stream is converted by a city into a public sewer by enclosing it and assuming control of it and by appointing officers to keep it in repair, the city will be liable for damages the same as if the sewer were originally an artificial one.

3. TORTS—*extent of liability of joint tort-feasor*. A tort-feasor who contributes to an injury is liable for the entire damage resulting from the joint act of all tort-feasors.

4. DAMAGES—*when instructions limit recovery to evidence*. *Held*, that the instructions complained of in this case properly limited the recovery of the plaintiff to such damages as were shown by the evidence.

Action in case. Appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed October 19, 1909.

ROBERT W. MARTIN, for appellant.

DONAHOE, McNAUGHTON & McKEOWN, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This is an action on the case, brought in the Circuit Court of Will county, by Peter Fox against the City of Joliet, to recover damages for the deprivation of the use, occupation and enjoyment of his home, for sickness of members of his family, and for expenses incurred in their treatment, caused by appellant turning sewage into a natural watercourse running across appellee's premises. The suit was begun August 7, 1906, and a trial resulted in a judgment for $1,200 for appellee, which, on appeal, was reversed. City of Joliet v. Fox, 135 Ill. App. 444. There, a full state-

ment of the averments of the declaration may be found. On the reinstatement of the cause, the five years' Statute of Limitations was interposed. The second trial resulted in a verdict for appellee for $1,000. A *remittitur* for $200 was filed, a motion for a new trial was denied, judgment was entered for $800 and the city prosecuted this appeal.

The watercourse rises near the northern limits of the city, flows south about a mile, then southwesterly about a mile and empties into the Desplaines River. In 1873, appellant deepened the lower portion below the point where appellee afterwards lived, to permit the flow of surface waters. In 1890, appellant deepened and widened the stream, built stone walls on either side, and covered it with planks along its entire length. After that it was called the slough drain. Later, the covering of the drain on appellee's premises rotted and was replaced by stones cemented together. In 1892, appellant built, in Cass street, a fifteen inch sewer about three quarters of a mile long and connected it with the slough drain, and afterwards built sewers in eight other streets and connected them with the Cass street sewer or directly with the slough drain. The territory thus drained was thickly populated, most of the buildings having sewer connection, so that much vile smelling matter passed into the drain at a point about two blocks above appellee's house.

The evidence shows conclusively that for a number of years prior to the trial, the condition of the drain was such that nauseous odors, steam and foul gases escaped through the crevices in the sides and cracks in the covering into appellee's house; that the cellar filled with steam when the doors were shut; that the wall paper and carpets in the house got mouldy, as also did fruit and clothes left in the cellar; that before the sewers were connected with the slough drain, appellee and his family enjoyed good health, and that thereafter, during the five years prior to the bringing of the suit, members of his family were sick, and three

daughters contracted tuberculosis and died; and that after leaving the premises the other members of appellee's family improved in health. Two physicians who had attended members of appellee's family during their sickness, testified as to the possible effects of the drain upon their health.

It is urged that expert testimony was not admissible unless sufficient to show that no other cause than the slough drain could have produced the sickness of the members of appellee's family. In Illinois Central Railroad Company v. Latimer, 128 Ill. 163, physicians who were examined on the trial below were asked whether fright would produce the heart trouble with which appellee was afflicted, and the court held that it was proper for them to give their professional opinion. In Supreme Tent Knights of Maccabees of the World v. Stensland, 206 Ill. 124, a physician was asked if, in his opinion, the death of the party could have been caused by strangulation, and the court held the question proper. In the case at bar, the physician did not testify that the odors arising from the slough drain caused the sickness. One testified that the constant breathing of the sewer gas of which the water in the slough drain was full would lessen a person's resistance to disease, and that such a person would succumb to tuberculosis much easier than a person with a strong resistance; and the other, that, in her opinion, the condition of the drain would, in time, cause a person residing over it to have tuberculosis. We think there was no error in the admission of this testimony.

For appellee, one Robeson testified that his place of business was over the slough drain and within one hundred and fifty feet of appellee's house; that the water smelled very offensive, and that he had headaches and no appetite, was weak and dizzy; that it undermined his system and poisoned him; that there was steam in his shop in the morning; that the joists in the floor over the drain rotted, and that the fumes or smells of the slough drain disabled him. Appellant

contends that his testimony was incompetent because it did not tend to prove that appellee's home was rendered physically uncomfortable, and that there was no proof offered as to what Robeson's sickness was, nor that it was the result of sewage turned into the slough drain by the city. With the exception of the statement as to the effect of the drain upon his health, this evidence was competent. There was no objection to his testimony that the smell from the drain affected his health until he stated that "it disabled" him, when an objection was made to the question that elicited this answer; nor was there a motion to strike any of his testimony on this subject from the record. Thus there is nothing on this question preserved for our consideration. Robeson's wife testified that the gases from the drain weakened her husband and affected his stomach. There was no objection to the question to which this answer was given, but a motion to strike out the answer was made and denied. Later, all her testimony as to the effect of the slough drain upon her husband's health was excluded. Appellant thereby obtained what it sought under its motion to strike the answer from the record.

Appellant complains that a number of appellee's instructions were erroneous, on the ground that they told the jury that if they believed, from the evidence, that appellant had assumed control of the stream in question and converted it into a sewer for public use, it would be obliged to maintain the same in such condition as not to injure those through whose property the stream passed, because the declaration did not charge that appellant had assumed control over the slough drain and converted the same into a sewer. It is true that the word "convert" is not used in the declaration, but it is there charged that appellant "caused great quantities of dirt, offal, sewerage, night soil and filthy, unsanitary and decaying matter and substances," to be emptied into the stream above appellee's house, which were carried through his prem-

ises. We think this averment is equivalent in law
to an allegation that the city converted the natural
watercourse into a sewer. If a running stream is con-
verted by a city into a public sewer by enclosing it
and assuming control of it, and by appointing officers
to keep it in repair, the city will be liable for damages
the same as if the sewer were originally an artificial
one. Am. & Eng. Enc. of Law, 2nd Ed., Vol. X, 245.
Village of Kewanee v. Ladd, 68 Ill. App. 154.

Appellant also complains that appellee's instruc-
tions do not limit the recovery of appellee's damages
to such an amount as was shown by the evidence, but
left it to the fancy of the jury to fix the amount of
damages as they saw fit.

The fifth and seventh instructions told the jury that
if they believed, from all the evidence in the case, that
the city did certain things and that certain things were
true, then the depreciation in rental value was not the
true measure of damages, but the true measure of
damages was compensation for physical discomfort, for
being deprived of the use and comfort of his home,
and in regard to such damage the amount in dollars
necessary to compensate the plaintiff need not be
stated by any witness, but should be left to the judg-
ment and discretion of the jury. These instructions
did not expressly say that this judgment and discre-
tion and such compensation must be based upon the
facts in evidence; but when all the given instructions
are considered as a series, we are of opinion that the
jury could not have failed to so understand its duty.
"Where the injury is to the physical comfort and re-
sults in the deprivation of the comfortable enjoyment
of a home * * * the amount in dollars necessary
to compensate the plaintiff in such cases is not to be
estimated by a witness or the actual amount thereof
established by testimony or calculated by any arith-
metical rule. It must be left to the sound judgment,
experience, and discretion of the jury to fix the
amount in view of the facts in each particular case."

Gempp v. Bassham, 60 Ill. App. 84, and authorities there cited. Appellee's instructions on the measure of damages were in harmony with the foregoing authority and were therefore proper.

We have examined carefully the modified and refused instructions, and while there may be some merit in appellant's criticism of the ruling of the court in regard to them, yet had they been given as asked, we are of opinion that the verdict of the jury could not reasonably have been otherwise than for appellee.

There was proof that a large portion of the offensive matter that fouled the water of the slough drain came from the closets on the sewers and from the steel works, but this did not lessen appellant's liability, for the reason that appellant, by connecting its sewers with the drain and draining the sewage into it, became responsible for the flowage of the polluted water through it, the same as if it were originally an artificial drain, and at least contributed to produce the injury sustained by appellee. It thus became a joint tort feasor and as such, was liable for the whole damage. Village of Kewanee v. Ladd, 68 Ill. App. 154; Bloomington v. Costello, 65 Ill. App. 407; 10 Am. & Eng. Enc. of Law, 245. There is evidence that during the five years prior to the commencement of the suit, members of appellee's family were sick much of the time; that he became liable for doctor's bills incurred by reason of such sickness which, it was shown, might have resulted from the condition of the drain; that he vacated his house because of such condition. Two juries upon substantially the same evidence have found that appellee sustained damages arising from appellant's conversion of the watercourse through his premises into a sewer. The first gave him a verdict of $1,200 which the trial court approved. The second, $1,000 which, after a *remittitur* of $200, was approved by the court. We do not think that $800 will more than fairly compensate appellee for the damage caused him

by appellant during the five years next prior to the bringing of the suit.

We are satisfied, from an inspection of the entire record, that substantial justice has been done, and that there is no error in the record warranting a reversal. Therefore the judgment is affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE DIBELL took no part in the consideration of this case.