[L. A. No. 8316. In Bank.—October 1, 1928.]

HORACE W. GREEN et al., Respondents, v. GENERAL PETROLEUM CORPORATION (a Corporation), Appellant.

A. L. Weil, Forrest A. Cobb and Harris F. Shaw for Appellant.

Swaffield & Swaffield for Respondents.

WASTE, C. J.—Plaintiffs instituted an action to recover damages for injuries to their property occasioned by the "blowing-out" of an oil-well during drilling operations by defendant. The trial court, sitting without a jury, gave judgment in favor of plaintiffs, and defendant appealed.

Respondents were the owners of certain improved real property in a residence district outside the city of Long Beach in Los Angeles County, which they occupied for a number of years as a residence. Appellant had leased the adjoining land and was engaged in drilling a well for the discovery and production of oil. In January, 1922, it had reached a depth of about 2,592 feet. Under the law of this state, in drilling oil-wells all water must be shut off before drilling into the oil zone, the work being done under the supervision of the state oil and gas supervisor. The usual method was followed in this case, and the well was cemented at 2,298 feet, or about 300 feet from the bottom of the hole. Just as the drilling crew finished bailing out the water for the purpose of testing the cement job, the well erupted, blowing off the control valves and wrecking the derrick. A stream of oil, gas, mud, and rocks shot into the air and on to respondents' property, which was located about 200 feet from the well. This mixture continued to pour forth from the well for more than twenty-four hours, covering respondents' property with the deposit to a depth of from four to seven inches, destroying the trees, lawns and garden, and greatly damaging respondents' dwelling and personal property.

The complaint contained two causes of action, one based upon liability without negligence, due to trespass on plaintiffs' property, the other based upon negligence on the part of the defendant in performing the drilling operations. The

trial court expressly found that the defendant had used and exercised ordinary care in the drilling of the well, and was not guilty of negligence in any particular. The evidence amply supports this finding. It was established that the drilling crew were skilled and experienced men; that the best standard of equipment was used, and that prior to the drilling of the well a careful cross-section of the logs of all other wells in that vicinity had been made, from which it was computed that no oil or gas would be encountered in the well for at least 200 feet below the point where the "blow-out" occurred. The court, however, sustained plaintiffs' first cause of action, and held defendant liable in damages for the trespass and injury to the premises. The appeal presents for our determination the question whether, under the existing circumstances of injury without negligence, appellant is liable for the damages suffered by respondents, and, if so, what is the measure of damages.

Appellant contends that it was absolved from all liability for the damages to respondents' property under the finding of the trial court that it had exercised due care and caution in its drilling operations. Respondents rely upon the application of the doctrine, *sic utere tuo ut alienum non laedas*, to the facts in the case. It is matter of common knowledge that the inner earth contains powerful gaseous forces, frequently found in proximity to and in connection with deposits of petroleum substances. It was a known fact that a tremendous pressure of gas underlay the particular locality in which appellant was carrying on its drilling operations. It proceeded with full knowledge of the situation. As other "blow-outs" of gas had occurred in the field, it installed on the casing-head of its well devices adapted to hold such a flow. It endeavored to compute the precise depth at which oil and gas would be encountered, but penetrated the danger zone sooner than was anticipated, with the resulting damage to respondents' property. Appellant asserts that there were no preliminary indications that a "blow-out" was imminent, and that the well was the "wildest" ever encountered by its drillers in their experience. Assuming that to be so, the fact does not materially affect the consideration of the case, for we are not now dealing with an unforeseen event or such a happening as, amounting to an "act of God," serves to relieve from re-

sponsibility for injury occasioned thereby. In this case, the primary inquiry leads to but one conclusion, and that is that the construction of the well, an enterprise lawful in itself, was the direct and proximate cause of the gas blowout. The well itself brought the gas, and its accompanying debris, to the surface. If the appellant had actually and intentionally penetrated the volume of gas in the depths of the earth, so that the gas flowed into the well, no one would dispute that the sinking of the well was the cause of that result. It so happened that the gas was nearer the surface than appellant anticipated, and, by its own natural force, broke through. The result was as much the direct and proximate consequence of the sinking of the well as if the volume of gas had been intentionally liberated, as it would have been had the drilling continued. The well brought to the surface of the earth an uncontrollable element, productive of injury to property located in proximity to the drilling operations carried on by the appellant.

Appellant apparently does not contend that respondents must go without redress if their legal rights have been invaded. Its exact contention is that the respondents have no legal rights in the matter, for the reason that the rule of liability without negligence has no place in the law of this state, but, on the contrary, has been expressly repudiated by the decisions of this court. Before it can be held liable for the damage suffered by the respondents, it argues, former adjudications of the court must be overturned. We do not share in that view. That an injury may exist without liability under some circumstances is certain. But such a result is contrary to the general rule of liability. (*Sussex Land etc. Co.* v. *Midwest Refining Co.,* 294 Fed. 597. [34 A. L. R. 249].) The cases decided by this court correctly apply the law to established facts, but no case exactly like the one now before us has previously been presented for consideration. The rule is laid down in the decisions that a defendant is not liable unless he has been guilty of negligence. It has many variations. For instance, there is found in our reports the declaration that when a person engaged in a lawful business exercises due care, the law does not make him an insurer of others against those consequences of his acts which reasonable care and foresight could not have prevented. The rule thus stated was applied

in a case involving the duty of a master to a servant. (*Thompson* v. *California Const. Co.*, 148 Cal. 35 [82 Pac. 367].) Neither is it to be doubted that where a defendant's business is lawful and proper in its conduct the law does not impose the obligation of saving harmless others from the consequences resulting from the occurrence of inevitable accident. Such a situation was involved in *Sutliff* v. *Sweetwater Water Co.*, 182 Cal. 34 [186 Pac. 766]. Appellant contends that the rule that one is not liable for injury to another in the absence of negligence is positive, and that no exceptions to it are recognized in California. All apparent exceptions, it asserts, can, for the most part, be identified as relating to nuisances *per se*, and, in any event, are cases in which the necessary and direct consequence of the act is an invasion of the property of another. In other words, to render the doer liable in damages, appellant contends the act must, of itself, be unlawful or have been negligently done. ■ Citation of authority is, of course, unnecessary to support the doctrine that, where one person does something he has no legal right to do, to the prejudice of another, or, doing something he may rightfully do, does it negligently, or neglects doing something he should do, and another is injured thereby, the one doing the act, or omitting to do it, is liable for the injury suffered by the other. (See *Perkins* v. *Blauth*, 163 Cal. 782, 786 [127 Pac. 50].)

■ The discovery and production of oil is a legitimate and lawful business, and, when properly carried on and maintained, is not a nuisance *per se*. Under normal conditions, the drilling operations cause no invasion of the adjacent lands. The fact, therefore, that the well of appellant was properly put down and carefully cared for, appellant contends, eliminates the only factor in the case which would justify a judgment for respondents in the absence of negligence. We do not think so. The present case does not arise from either the conduct of a nuisance *per se*, or from an inevitable calamity or act of God, but presents a situation to which the doctrine of *sic utere tuo ut alienum non laedas* may be applied in its broad and fundamental import. That ancient maxim of jurisprudence is incorporated, in substance, in the statutory law of this state. The Civil Code provides (sec. 3514): "One must so use his own rights as not to infringe upon the rights of another." Where one,

in the conduct and maintenance of an enterprise lawful and proper in itself, deliberately does an act under known conditions, and, with knowledge that injury may result to another, proceeds, and injury is done to the other as the direct and proximate consequence of the act, however carefully done, the one who does the act and causes the injury should, in all fairness, be required to compensate the other for the damage done. The instant case offers a most excellent example of an actual invasion of the property of one person through the act of another. The fact that the act resulting in the "blow-out" was lawful and not negligently done does not, in our opinion, make the covering of respondents' property with oil, sand, mud, and rocks any less an actual invasion of and a trespass upon the premises. ▮ It ought to be, and we are of the view that it is the rule that, where an injury arises out of, or is caused directly and proximately by the contemplated act or thing in question, without the interposition of any external or independent agency, which was not or could not be foreseen, there is an absolute liability for the consequential damage, regardless of any element of negligence either in the doing of the act or in the construction, use or maintenance of the object or instrumentality that may have caused the injury. In our judgment, no other legal construction can be placed upon the operations of the appellant in this case than that, by its deliberate act of boring its well, it undertook the burden and responsibility of controlling and confining whatever force or power it uncovered. Any other construction would permit one owner, under like circumstances, to use the land of another for his own purpose and benefit without making compensation for such use. We do not conceive that to be the law.

Appellant's contention that the doctrine of liability without negligence does not exist in this state rests primarily upon its conception of what this court has held in former decisions, in cases involving inevitable calamities, nuisances *per se*, and the like. Declarations in the form of statements of general principles in those cases must be viewed in the light of the facts under consideration. Neither appellant nor respondents have brought to our attention a decision in a case exactly like this one. We have made an independent examination, and find none. The nuisance *per se* and inevitable calamity cases have served, for the greater part, to

lead us to the conclusion that the rule that injury may exist without liability is, as has been so well stated by another court, ''contrary to the general rule of liability where injury is caused; and since, in a sense, it is a preference of the rights of one property owner or user over that of another; and since the law is a jealous guardian of the right to lawfully use property without interference or diminution; and since the rule of *'sic utere tuo ut alienum non laedas'* is of broad and fundamental importance—the rule which allows such injury without liability therefor is an exception which is and should be narrowly limited and carefully confined.'' (*Sussex Land etc. Co.* v. *Midwest Refining Co.*, 294 Fed. 597, 607.) The defendant in that case claimed, as does the appellant here, that the legal use of land by the owner is subject to and limited by the right of other property owners to develop the natural resources of their lands in a lawful and prudent manner. ''This contention means,'' said the court (p. 602), ''and is intended to mean that a land owner has a legal right to develop the natural resources of his land without liability for damage caused to other land owners thereby, provided he pursues this development in a manner to cause as little damage as possible. We think it clear either that such statement of the rule is too broad or that the application thereof is limited by certain practical and legal considerations. . . .

''But, elastic as this rule is, both reason and authority have declared certain limitations beyond which it cannot extend. One of these limitations is that it is 'unreasonable' and unlawful for one owner to physically invade the land of another. There can be no *damnum absque injuria* where there is such a trespass.''

On this phase of the question we are of the view that the judgment of the lower court must be affirmed. It is unnecessary for us to enter into a prolonged discussion of the cases cited by the respective parties, a few of which we have so briefly noted, or to analyze those most strongly relied on by either side to the controversy. So far as the former decisions of this court are to be regarded, none of them, when rightly understood, extends the doctrine of nonliability without negligence to a case like the present. Neither do they prevent the application of the rule relied on by the respondents to the instant case.

■ The trial court made special findings awarding the respondents damages amounting to $9,180.80, segregated into the following items: For injuries to personal property, $164; for injuries to the realty, $6,516.80; for the eviction of the respondents from their residence, $2,500. Appellant concedes the allowance for the damages to the personalty to be correct, but contends that the court did not apply the proper measure in arriving at the amount of damages to the realty and for the eviction. In the matter of the injury to the realty, the court specially found, by specific items, what it would cost to restore the premises to their original condition, and allowed the aggregate amount as damages. Appellant does not dispute the accuracy of the court's figures, but contends that the discovery of oil in its well gave a new value to the property of the respondents—a value as oil property, greatly in excess of its previous value as residential property—and that the restoration of the property to its original condition will add nothing to its value for its new use. Wherefore, the value being greater after the "blow-out" than it was before, appellant argues, the respondents suffered no loss by reason of the injury to the realty. We are not impressed with appellant's argument on this point. The rule to be applied in this case is: If the cost of repairing the injury by removing the debris deposited by the appellant, and otherwise restoring the premises to their original condition, amounts to less than the value of the property prior to the injury, such cost is the proper measure of damages; and if the cost of restoration will exceed such value, then the value of the property is the proper measure. (*Salstrom* v. *Orleans etc. Mining Co.*, 153 Cal. 551, 558 [96 Pac. 292].) From the evidence and the findings, which are sufficient for all purposes, it appears that the trial court understood and acted within the scope of the rule.

■ In response to the general issue tendered as to the eviction of the respondents, the trial court found that by reason of the eruption of appellant's well, the premises of respondents were "rendered wholly uninhabitable and wholly useless for residential purposes, and plaintiffs were compelled to immediately remove themselves and their belongings from their said home, and were thereby evicted, ousted, and ejected therefrom, and were deprived of the use and

enjoyment thereof for residential purposes," for which eviction the court awarded damages in the sum of $2,500. The testimony of the two respondents as to the circumstances under which they were compelled to flee from their home, its uninhabitable condition after the eruption and the manner in which they were deprived of its use, was admitted in support of the general issue, and amply supports the finding. The premises could have been restored to their original condition. The cost of such restoration was fixed by the court. If that work had been done, it does not appear but that respondents could have resumed occupancy of the premises. Their recovery was limited to compensation for the damages naturally and necessarily resulting to them from the injury alleged in the complaint. No special damages, such as cost of removal from the premises, loss of rentals of the premises, or cost of renting another home, were alleged or proved. We are not, however, left to speculation as to the basis on which the trial court fixed the amount of the damages allowed for eviction. The law affords redress by giving damages against a wrongdoer for the annoyance and discomforts suffered in such cases as this. (*Baltimore etc. R. R. Co.* v. *Fifth Ave. Baptist Church*, 108 U. S. 317, 329 [27 L. Ed. 739, 2 Sup. Ct. Rep. 719, see, also, Rose's U. S. Notes].) We must assume that the trial court allocated the full amount of the damages awarded for the eviction as compensation for the physical discomforts suffered by the respondents, and for the deprivation of the use and comforts of their home. The amount of money necessary to compensate the plaintiffs in such cases is not to be estimated by witnesses or the "actual amount" established by testimony or calculated by any arithmetical rule. It must be left to the sound judgment, experience and discretion of court or jury to fix the amount in view of the facts in each particular case. (*Gempp* v. *Bassham*, 60 Ill. App. 84, 87; *Fox* v. *City of Joliet*, 150 Ill. App. 491, 495; *Judson* v. *Los Angeles etc. Gas Co.*, 157 Cal. 168, 172 [21 Ann. Cas. 1247, 26 L. R. A. (N. S.) 183, 106 Pac. 581]; see, also, *Fairbank Co.* v. *Nicolai*, 167 Ill. 242, 247 [47 N. E. 360]; *Gavigan* v. *Atlantic Refining Co.*, 186 Pa. St. 604, 613 [40 Atl. 834]; *Berger* v. *Minneapolis Gaslight Co.*, 60 Minn. 296, 302 [62 N. W. 336].) ▇ The damages awarded by the court to the plaintiffs for the eviction may have been liberal, but they

do not appear to us so excessive as to justify our interfering with the allowance.

The judgment is affirmed.

Richards, J., Shenk, J., Curtis, J., Preston, J., Tyler, J., *pro tem.*, and Seawell, J., concurred.

Hearing in Bank denied.

All the Justices present concurred.