FEENEY AND MYERS, a co-partnership composed of Mark Feeney and Chas. Meyers, doing business as Feeney and Meyers, Plaintiffs,

v.

EMPIRE STATE INSURANCE COMPANY OF WATERTOWN, NEW YORK, Defendant.

Civ. No. 3653.

United States District Court
E. D. Oklahoma.

April 6, 1955.

Williams, Williams & Williams, Ardmore, Okl., and Otey, Johnson & Evans, Ardmore, Okl., for plaintiff.

Hanson, Green & Moran, Oklahoma City, Okl., for defendant.

WALLACE, District Judge.

Plaintiffs, Feeney and Meyers, a co-partnership, composed of Mark Feeney and Charles Meyers, Oklahoma citizens,

bring this action on an insurance policy issued by defendant Empire State Insurance Company of Watertown, New York, to recover for certain partnership well servicing equipment destroyed when an oil well being serviced by plaintiffs caught on fire.[1] Plaintiffs urge that the loss was expressly covered under the "fire" provision of the issued policy,[2] whereas, defendant asserts that the loss was caused by a "blowout", a type of loss specifically excluded under the policy terms.[3]

Inasmuch as there was no material conflict in the introduced evidence as to the factual occurrences surrounding the loss, at the close of all evidence the empanelled jury was discharged, and the Court took under advisement the question of contractual construction.[4]

The evidence established that the well in question had been drilled to a total depth of about 6600 feet; and, that the well pipe or casing had been run to the well bottom and cemented in place. A master gate (or control head) and oil saver was placed at the well head, which master gate was designed to enable the shutting in of the well through the string of pipe or casing against pressures likely to be encountered in completing the well. After testing the sands at two lower levels, the casing was perforated opposite the formations located at 5,582 to 5,610 feet; and, the formations so perforated were treated with special substances under pressure to cleanse and fracture the producing formations and thereby encourage the flow of oil and gas. Subsequent to this treatment and while the workers were swabbing the well in an effort to induce the flow of oil, built-up pressure blew off the oil saver from the control head top and hurled the string of tools out of the hole. A spark, generated by the oil saver or tools striking the derrick, ignited the well and the ensuing fire destroyed plaintiffs' equipment. Special equipment was hurried to the burning well; and, with such equipment the flames were blown away from the master gate controls and by use of such controls the workers closed in the well thereby stopping the flow from the well and extinguishing the fire.

The pivotal issue before the Court is whether the undisputed occurrences leading up to the instant loss constituted a "blowout" as such term is commonly used and understood in the parlance of the oil and gas industry, so as to place such loss within the purview of the exclusion clause.[5]

Plaintiffs urge that the term "blowout", as used in the oil industry, refers exclusively to the sudden eruption of an oil and gas well wherein *part,*

1. The property destroyed was a portable R. L. Cardwell Double Drum Spudder (Ser. No. RL 322) with hoist including drill line and bailer, drilling tools, crown and miscellaneous tools and equipment used with spudder.

2. The policy, floater in type, among other things insured against loss by "(a) Fire and Lightning: * * *"

3. The exclusion endorsement provided: "It is hereby understood and agreed that this policy does not cover loss or damage caused by Blowout or Cratering of an oil or gas well."

4. "If the facts upon which liability is claimed or denied under an insurance policy are undisputed, and the existence or amount of liability depends solely upon a construction of the policy, the question thus presented is one of law for the court to decide." 29 Am.Jur. § 1530, p. 1151. See, for example, Equitable Life Assur. Soc. v. Hemenover, 1937, 100 Colo. 231, 67 P.2d 80, 110 A.L.R. 1270, where meaning of word "poison" in double indemnity clause was a question of construction by Court.

5. "Although words in a contract are generally to be given their usual and primary meaning at the time of the execution of the contract, words of art or words connected with a peculiar trade are to be given the signification attached to them by experts in such art or trade, unless it appears that they were used in a different sense. Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate. * * *" 12 Am.Jur. s. 237, p. 672.

*if not all,* of the eruption is *outside* the casing.[6] However, the evidence in its entirety establishes beyond question that said term has no such restricted meaning and that the happenings at well site in question did amount to a well "blowout", even though all erupting took place within the casing.[7] The term "blowout" may be generally defined as that condition wherein a well builds up sufficient gas pressure at the bottom of the hole to cause a sudden, forceful explosion or eruption which cleans out the well and causes it to go out of control.[8] Such eruption may be within the casing, without the casing or both within and without. The identifying characteristics are: (1) a sudden eruption; (2) a cleaning out of the well; and, (3) a going out of the control. All three of these characteristics were present in the accident in question; the well went out of control as a result of a sudden eruption which blew off the oil saver and blew out the string of tools.

Plaintiffs' argument that the well was never out of control is refuted by the evidence. Although the eruption did not destroy the control head and even though the well could have been controlled had the tools not been in the hole at the time of the mounting pressure, the presence of which tools made the control head inoperative, the well did in fact go out of control. The hurried abandonment of the rig by the workmen just prior to the eruption demonstrates that the well at that point could no longer be controlled. Concededly, but for the fire which followed the well could have immediately been brought under control; however, such does not alter the fact that prior to the fire and as a result of pressure in the hole the well went out of control.

■ Plaintiffs also assert that inasmuch as the policy in question insured against fire and the controverted exclusion clause only excepted damage caused by "blowout or cratering" that it was the intent of the draftsman to merely exclude that damage caused by the concussion and explosive force of the blowout and not to exclude fire (a separably definable loss) caused by the blowout. However, a reasonable construction of the insurance contract evidences no such intent. The exclusion clause in question clearly reads "that this policy does not cover loss or damage caused by Blowout or Cratering of an oil or gas well". Under the evidence, there is no question but what a blowout brought on the fire and that such blowout was the proximate, or dominant efficient cause of plaintiffs' loss.[9]

6. There is no question but what a blowout ofttimes entails an erupting outside the casing; and, that "cratering" does not occur except when such type of blowout occurs. A graphic description of such a blowout is found in Green v. General Petroleum Corp., 1928, 205 Cal. 328, 270 P. 952, 953, 60 A.L.R. 475: "* * * Just as the drilling crew finished bailing out the water for the purpose of testing the cement job, the well erupted, blowing off the control valves and wrecking the derrick. A stream of oil, gas, mud, and rocks shot into the air and onto respondents' property, which was located about 200 feet from the well. This mixture continued to pour forth from the well for more than 24 hours, * * *". As to a blowout followed by cratering, read Watkins v. Gulf Refining Co., 1944, 206 La. 942, 20 So.2d 273, 276, 277.

7. See in particular technical data introduced in evidence. Also, as defined in the rules and regulations of the Oklahoma Corporation Commission, "Blowout shall mean the uncontrolled escape of oil or gas, or both, from any well as a result of encountering high formation pressure." (DX-2, p. 8).

8. As observed by Judge Huxman in Central Manufacturers' Mut. Ins. Co. v. Elliott, 10 Cir., 1949, 177 F.2d 1011, 1012: "* * * The term 'blowout' as used in oil operations has a technical meaning. It is generally defined as a condition in which a well builds up a sufficient gas pressure at the bottom of the hole and causes a rather sudden, forceful eruption or explosion which cleans out the well and causes it to go out of control."

9. In Shirey v. Tri-State Ins. Co., Okl., 1954, 274 P.2d 386, Syl. 2, the Court said: "In determining the cause of a loss for the purpose of fixing insurance liability when concurring causes of the

# 732

The defendant is entitled to judgment.

Within 15 days counsel should submit a journal entry which conforms with this opinion.

damage appear, the proximate cause is the dominant or efficient one that sets the other causes in operation; incidental causes are not proximate though they may be nearer in time and place to the loss." Thus, as recognized by analogy in 45 C.J.S., Insurance, § 818, page 867: "*Explosion followed by fire.* It has been held that under such an exemption without qualification there would be no liability for fire resulting from an explosion * * *". ·Cf. Northwestern Nat. Ins. Co. v. Westmoreland, Tex.Civ. App., 1919, 215 S.W. 471, where the policy provided that the insurer should not be liable for loss by explosion, it was held that if a fire broke out in the insured building, and, as a direct result, an explosion occurred which wrecked the building, a recovery could be had; but that, if an explosion occurred in the building, and as a direct result thereof a fire followed in the wreckage, no recovery could be had. Same conclusion on second appeal, Tex. Civ.App., 227 S.W. 239. Distinguish, where explosion excluded but where hostile fire brings on explosion. Springfield Fire & Marine Ins. Co. v. Oliphant, 1931, 150 Okl. 1, 300 P. 711.