[Civ. No. 20237. Second Dist., Div. One. Aug. 9, 1955.]

WILLIAM S. BECK et al., Respondents, v. BEL AIR PROPERTIES, INC. (a Corporation), et al., Appellants.

Chase, Rotchford, Downen & Drukker, Donn B. Downen, Jr., Otto M. Kaus, Combs & Hoose, Lee Combs and Harned Pettus Hoose for Appellants.

Gold & Needleman for Respondents.

DRAPEAU, J.—By the instant action, plaintiffs sought to recover damages for personal injuries sustained by them, and for injuries to their property, when streams of mud, rock and debris inundated their home during heavy rainfalls in the year 1952.

It appears from the record that the Bel Air Land Company, a corporation, was organized in 1946 by defendants J. A. Thompson, Hiram J. Hamer and E. Steinkamp. Bel Air Properties, Inc., was incorporated at the same time, having as its directors the same men, who owned all the stock of both corporations; with J. A. Thompson as president. In March of that year, said Land Company acquired a large tract of land from Alphonzo E. Bell Corporation. This tract embraced all of the land referred to in this action, including tracts number 13333 and 14643.

In April of the same year, Somera Corporation was organized with J. A. Thompson as its president.

In September, 1946, Land Company completed its sale to Somera Corporation of the upper portion of said tract designated as Tract No. 13333. And Somera contracted with the defendants Thompson for the necessary work of subdividing and grading Somera Ridge into building sites. Bel Air Properties acted as selling agent for Somera.

Bel Air Building Company was incorporated on January 15, 1947, and acquired several lots from Somera for speculative building purposes.

In September, 1948, Land Company sold to West Coast Bond and Mortgage Company the lower portion of said land lying in Roscomare Canyon. This was subdivided and recorded as Tract No. 14643.

On May 31, 1950, plaintiffs acquired Lot 4 of Tract No. 14643 and built a single family residence on Roscomare Road at the bottom of the canyon. Defendants Williams, Phillips, Low and Moore were the owners of Lots 83, 85, 86, 87 and 88, respectively, of Tract No. 1333. These lots were situated on Somera Road above and to the east of plaintiffs' lot.

The land between the two tracts consisted of a steep slope and small canyon of hard packed soil and rock which, it is alleged, had effectively resisted the elements for centuries without change. It was capable of withstanding heavy rainfall and the runoff therefrom without eroding or washing away. And it was thickly covered with trees and natural vegetation.

It is also alleged that when Somera, Bel Air Properties, Bel Air Building and others subdivided the upper lots in 1946, the bulldozing and grading was negligently done, to wit: That large quantities of soil and rock were cut from the top of the slope and pushed over the summit above plaintiffs' lot; and were left there unsupported and in an inherently dangerous position. In January and March of 1952, heavy rainfalls caused such loose soil and rocks to flow in large quantities over plaintiffs' land, damaging their house and inflicting injuries on them.

In the work of bulldozing and grading at the summit, two fills were constructed on the hillside to the rear of plaintiffs' lot. Fill No. 1 was large and to the left of the lot; Fill No. 2 was smaller and joined No. 1 to the right above the east boundary of plaintiffs' property. Fill No. 1 was located largely on Lots 87 and 88 (Moore) and partly on Lots 85 (Phillips) and 86 (Low), all in Tract No. 13333. Fill No. 2 was located on Lot 83, owned by defendant Williams, in the same tract. It is admitted that Thompson and Son constructed Fill No. 1 under contract with Somera.

The complaint alleged 11 causes of action, to wit: For damages to property: (1) resulting from negligence; (2) based on the rule of absolute liability; (3) caused by trespass. For mental suffering of plaintiffs husband and wife: (4-7) resulting from negligence; (5-8) based on absolute liability; (6-9) caused by trespass. For injunctive relief (10), and for declaratory relief (11).

The answers denied all allegations of negligence and the allegations charging absolute liability and trespass, except that it was admitted that Somera contracted with Thompson and Son for the earth moving operations at the summit of the ridge. Affirmative defenses of contributory negligence, assumption of risk and inevitable accident were pleaded.

During the trial, plaintiffs elected to abandon the tenth and eleventh causes of action for equitable relief. Causes sixth and ninth for mental suffering caused by trespass were not submitted to the jury.

At the start of the trial, it was stipulated that defendants Low would pay $2,000; defendants Elwain Steinkamp and E. Steinkamp, Inc. would jointly pay $2,000, and defendants Phillips $1,500, in consideration for which plaintiffs "will execute a covenant not to sue . . . and will dismiss the action as to those defendants . . . without prejudice."

In accordance therewith, the trial court advised the jury that

by agreement between them and plaintiffs, the said defendants had been excused from the lawsuit. Also, that their being excused "casts no implication of any kind that the other defendants are or are not liable as charged."

The court denied the other defendants' motions to dismiss on the ground that plaintiffs had accepted payment for damages from joint tort feasors. At that time, permission was granted to said defendants to amend ther answers setting up the covenants not to sue and payment of $5,500 thereunder, and praying that such sum be deducted from the amount of plaintiffs' final recovery, if any.

Thereafter, the motions of defendants for nonsuit were denied, except as to defendant Hamer, whose motion was granted.

The jury was instructed on all phases of the case, including the doctrine of absolute liability.

The jury rendered seven separate verdicts in favor of plaintiffs and against the following defendants:

| | | |
|---|---|---|
| Bel Air Land Company | $5668.41 | |
| Bel Air Properties | 5668.41 | |
| Bel Air Building Company | 5668.41 | |
| Somera Corporation | 5668.41 | |
| Thompson and Son | 5668.43 | |
| Harry E. Williams | 1000.00 | |
| F. Sibley Moore and Rozene Moore | 1000.00 | $30,342.07. |

From the judgment entered on said verdicts, the first five above-named defendants have appealed.

Two sets of appeal briefs have been filed: one on behalf of Somera and Bel Air Building Company; the other for Bel Air Land Company, Bel Air Propertes, and the Thompsons.

It is first urged that the trial court erred in denying appellants' motions to dismiss. This for the reason that the voluntary dismissal of defendants Low, Steinkamp and Phillips for a consideration constituted a retraxit.

As hereinbefore stated, it was stipulated that upon payment of a total of $5,500 by said defendants, plaintiffs "will execute a covenant not to sue and not to sue further . . . and will dismiss the action as to those defendants . . . without prejudice."

Immediately thereafter, the court advised the jury as follows: "Ladies and Gentlemen of the Jury, the defendants

Elwain Steinkamp and E. Steinkamp, Inc., Seth E. Low and Marilyn Low, have been excused for legal reasons from this lawsuit. Let me advise you that their exclusion, of course, carries no implication of any kind that any of the other defendants are or are not liable. . . .

"Mr. Downen: I am sorry, I know that the Court has done probably the best the Court felt it could do in handling this, but I think by telling the jury that these people have been excused for legal reasons, implies that they have been dismissed by the court from the lawsuit.

"The Court: Well, I will state 'by agreement', if you prefer. . . . Ladies and Gentlemen of the Jury, it has been called to my attention that the exclusion of the two groups of defendants that I mentioned has been by agreement between those defendants and the plaintiffs. . . .

"The Court: I want to advise the jury pursuant to an agreement between the plaintiffs and defendants D. L. Phillips and Joy Bradley Phillips, the Phillipses have been excused from the lawsuit and will not be in these proceedings further. I also want to advise you their being excused, of course, casts no implication of any kind that the other defendants are or are not liable as charged in the complaint and denied in the answers."

In the minutes of the court for the respective days, the following memoranda appear:

"Cause having been settled as to defendants Low and Steinkamp, the said defendants and their counsel are excused by the Court from further attendance. . . .

"Cause having been settled as to defendants Phillips, the said defendants and their attorney are excused by the Court from further attendance."

In *Laurenzi* v. *Vranizan*, 25 Cal.2d 806, 813 [155 P.2d 633], the Supreme Court stated: "The contention is made that the court erred in admitting evidence over objection that the sum of $3,175 was paid to the plaintiff by L. Ferro Produce Co. prior to the latter's dismissal from the action. The dismissal was made without prejudice, and, so the plaintiff claims, the consideration stated was received in return for a covenant not to sue. The question is not an issue on this appeal, but the plaintiff asks that the rule be declared at this time for the guidance of the court on a retrial. In *Kincheloe* v. *Retail Credit Co., Inc.*, 4 Cal.2d 21 [46 P.2d 971] and *Ellis* v. *Jewett Rhodes Motor Co.*, 29 Cal.App.2d 395 [84 P.2d 791], it was pointed out that the rule that a release of one

of several joint tort feasors operates as a release of all does not apply to a covenant not to sue inasmuch as such an agreement does not have the effect of a release. The distinction is recognized in Restatement of the Law of Torts, section 885, where it is stated that, although a covenant not to sue does not discharge another who is liable for the same harm, payments by one tort feasor on account of a harm for which he and another are each liable, diminish the amount of the claim against the other whether or not it was so agreed at the time of payment and whether the payment was made before or after judgment. Since the plaintiff can have but one satisfaction, evidence of such payments is admissible for the purpose of reducing *pro tanto* the amount of the damages he may be entitled to recover. (Citing cases.)''

The rule above enunciated is applicable to the facts here presented. ▮ No order of dismissal of the defendants Low, Steinkamp or Phillips was ever made or entered in the case.

In *Markwell v. Swift & Co.*, 126 Cal.App.2d 245, 248 [272 P.2d 47], upon which appellants rely, the trial court made the following order:

"Pursuant to stipulation the Court orders this action dismissed as to defendants Swift & Company, a corporation, Ralph Chilton, Doe I and Doe II. Due to the fact that both defendants ... made settlements with the plaintiff, said defendants are not given judgment for their costs."

Upon motion of the other defendants that such dismissal constituted a retraxit and barred recovery against them, the court granted nonsuits as to them. This court affirmed the judgment of nonsuit on appeal. A number of cases were cited to support such affirmance, in each of which judgments of dismissal were made and entered. Among such authorities was *Lamb v. Herndon*, 97 Cal.App. 193, 202 [275 P. 503] from which the following was quoted at page 254:

" 'In the case under consideration, had the application for dismissals . . . been made in open court upon the agreement of the litigants as hereinbefore set forth and thereupon the court had entered judgments of dismissal they would have been judgments on *retraxit* and would have barred further litigation of the matter involved. (Citing cases.)' ''

The instant covenants not to sue did not constitute a retraxit.

Appellants also assert that the doctrine of absolute liability

is not applicable to the instant situation. And that the court
erred in instructing the jury that they (appellants) were
absolutely liable for the damage caused by the dangerous con-
dition of the fills on the slope above respondents' property,
regardless of the degree of care exercised in their creation and
maintenance.

In discussing the doctrine in the late case of *Boyd* v. *White,*
128 Cal.App.2d 641, 654 [276 P.2d 92], the court stated:

"California has adopted a policy of imposing strict liability
on owners or bailors in connection with certain activities. But
this state has limited such policy to those activities that are
obviously and plainly ultrahazardous. Thus, drilling an oil
well in a settled area that 'blows off,' damaging adjoining
properties, imposes liability regardless of the care used (*Green*
v. *General Petroleum Corp.,* 205 Cal. 328 [270 P. 952, 60
A.L.R. 475]); or where hydrocyanic gas used to exterminate
cockroaches escapes (*Luthringer* v. *Moore,* 31 Cal.2d 489
[190 P.2d 1]); or where the defendant farmer employed an
independent contractor to spray his farm with gas containing
arsenic and the fumes from such spraying killed plaintiff's
bees located on nearby land (*Miles* v. *A. Arena & Co.,* 23 Cal.
App.2d 680 [73 P.2d 1260]). Cases involving other ultra-
hazardous activities can undoubtedly be cited. But the opera-
tion of an airplane in the year 1954 is not such a dangerous
activity that it can be placed in this category."

In the escaping hydrocyanic gas case of *Luthringer* v.
*Moore, supra* (31 Cal.2d 489), the Supreme Court in holding
defendant liable without proof of negligence, relied upon sec-
tions of the Restatement of Torts. In the course of its discus-
sion, it stated (p. 496): "It appears to be settled that the
question of whether the case is a proper one for imposing
absolute or strict liability is one of law for the court. (See
*Green* v. *General Petroleum Corp.,* 205 Cal. 328 [270 P. 952,
60 A.L.R. 475]; *Munro* v. *Pacific Coast Dredging etc. Co.,*
84 Cal. 515 [24 P. 303, 18 Am.St.Rep. 248]; Rest., Torts,
§ 520, com. h.)"

The Green case (205 Cal. 328) was one for damages for
injuries to property caused by the blowing out of an oil well
during drilling operations. In the eruption a stream of oil,
gas, mud and rocks shot into the air and upon respondent's
property situated about 200 feet from the well. The court held
that there was no negligence on the part of appellant in the
drilling operations. And, in considering the question of lia-
bility, stated at page 331:

"It is a matter of common knowledge that the inner earth contains powerful gaseous forces, frequently found in proximity to and in connection with deposits of petroleum substances. It was a known fact that a tremendous pressure of gas underlay the particular locality in which appellant was carrying on its drilling operations. It proceeded with full knowledge of the situation."

The court then stated the rule applicable in such cases as follows, at pages 333 and 334: .

"Where one, in the conduct and maintenance of an enterprise lawful and proper in itself, deliberately does an act under known conditions, and, with knowledge that injury may result to another, proceeds, and injury is done to the other as the direct and proximate consequence of the act, however carefully done, the one who does the act and causes the injury should, in all fairness, be required to compensate the other for the damage done."

The same principle is stated in Restatement of the Law of Torts:

"Section 519 . . . one who carries on an ultrahazardous activity is liable to another whose person, land or chattels the actor should recognize is likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm."

"Section 520. An activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and

(b) is not a matter of common usage."

Under comment on Clause (b) of section 520, *supra,* the following appears:

"*g. Concurrence of risk of harm and unusual nature.* In order that an activity may be ultrahazardous it is necessary that it satisfy the conditions stated in both Clauses (a) and (b). An activity which normally can be safely carried on, or an instrumentality which can ordinarily be safely used if reasonable care is exercised, is not ultrahazardous even though it is carried on to gratify some purely personal idiosyncrasy of the actor. On the other hand, even those activities or instrumentalities which cannot be made safe by the utmost precaution and care may be carried on or used without incur-

ring absolute liability if the activity or instrumentality is one which is commonly carried on or used. . . .

"*h. Function of court and jury.* What facts are necessary to make an activity ultrahazardous under the rule stated in this Section is a matter for the judgment of the court."

█ The situation here resolves itself into the query:

Should earth moving operations incident to subdividing and grading hills and slopes into building sites be grouped with escaping gas, oil drilling and dynamiting? Or, is it an activity that ordinarily can be safely carried on, if reasonable care is used?

This court is inclined to the latter view.

Respondents' expert, Mr. Benson, was asked (1) if it was customary in 1946 and 1947 to construct hillside fills; and (2) whether they could be constructed in such manner as to obviate a risk to others if carefully done? To both questions he answered "Yes."

Expert witnesses on both sides related methods of fill construction which, in their opinion, made the fills safe and stable. They agreed that if the fills were bonded into the hillside, uniformly compacted in thin layers to the required density, properly planted, the planting maintained, and some provision made to carry excess water from the face of the fill, they represented no danger.

To residents of Southern California, it is a matter of common knowledge that retaining walls, hillside terracing, planting and similar methods have been extensively and successfully used to hold fills in place. This is particularly true in the territory surrounding Los Angeles; and is evidenced by the extensive building operations made possible by hillside fills in the Baldwin Hills, the Hollywood Hills and the Santa Monica Mountains.

Moreover, the creation, construction and maintenance of hillside fills is a matter of common usage. Cutting, leveling and filling are the inevitable, constant and ordinary methods pursued in the development of hillside areas.

It follows that the instant activity is not so obviously and plainly ultrahazardous as to impose liability regardless of the care used.

█ As a result the trial court erred when it instructed the jury on the doctrine of absolute liability. Since it cannot be determined whether the jury's verdicts were based on negligence or were influenced by the instruction on absolute liability, such instruction was prejudicial.

In view of the conclusion reached, it is deemed unnecessary to pass upon other points raised by appellants.

For the reasons stated, the judgment is reversed.

White, P. J., concurred.

Doran, J., dissented.

Respondents' petition for a hearing by the Supreme Court was denied October 5, 1955.