[Civ. No. 16602. First Dist., Div. One. Apr. 10, 1956.]

LENA GALLIN, Appellant, v. JEANNE POULOU, Respondent.

Joseph L. Bortin for Appellant.

Boyd & Taylor for Respondent.

PETERS, P. J.—Plaintiff is a tenant in an apartment house owned by defendant. Defendant employed a contractor to construct some garages in the basement of the apartment

building.  Thereafter, some plaster fell from the ceiling in plaintiff's apartment, injuring her.  This action was brought on the theory that the construction work caused the building to vibrate, causing the plaster to fall, and that such constituted a trespass for which the landlord is responsible.  The trial court granted defendant's motion for a nonsuit.  From the judgment based thereon, plaintiff appeals.

In May of 1953 plaintiff, then 68, occupied a first-floor apartment in an apartment house then owned by defendant.  She had occupied the apartment for about 12 years.  The defendant had purchased the apartment house in 1947.  Defendant, who did not live in San Francisco, did not visit the property very often, nor did she employ a manager to supervise it.

For several years prior to 1953 the ceiling in the bathroom of plaintiff's apartment was cracked, and pieces of plaster hung down over the tub.  No plaster had ever fallen, however.  This condition had existed for several years.  Plaintiff never reported this condition to defendant, nor did defendant know about it.  There is no evidence that defendant was under any duty to repair this condition.

In March of 1953 the defendant engaged a Mr. Folino, whether as an employee or independent contractor does not clearly appear, to construct four garages in the basement of the apartment house directly below plaintiff's apartment.  The plaintiff testified that the construction work caused her apartment to vibrate.  Plaintiff complained to one of the workmen who came into the apartment and saw the condition of the plaster.  Who this workman was, what was his position, and what was his authority, if any, do not appear.  At any rate, plaintiff made no complaint to defendant.

On May 3, 1953, while plaintiff was bending over her bathtub, a piece of plaster, larger than a dinner plate, fell and hit her on the head and shoulders, causing the injuries for which this action was brought.  Prior to this date no plaster had fallen in plaintiff's apartment, nor, so far as is known, had plaster fallen any place else in the building.  While the garages were being constructed defendant never visited the premises during working hours, nor did she know what equipment the workmen used, nor how they performed their work.  She did visit the premises once or twice a week during the construction period, but such visits were always after the workmen had quit for the day.  On this evidence the trial court granted a nonsuit, and plaintiff appeals from the judgment based thereon.

The plaintiff expressly renounces any theory of liability based on the violation of any duty owed by a landlord to a tenant, or on negligence. The theory relied upon is disclosed by the allegation of the complaint to the effect that defendant "undertook substantial repairs, alterations, and improvements . . . which . . . in the normal course thereof, were apt to, and did set up severe vibrations," and that as a "direct and proximate result of said dangerous and defective condition, and said vibration, a certain piece of plaster . . . was caused to . . . fall . . . striking plaintiff on her head." In other words, plaintiff contends that the acts complained of constituted a trespass and are actionable regardless of negligence. She places particular reliance on the rule stated in the case of *Green* v. *General Petroleum Corp.*, 205 Cal. 328, 333 [270 P. 952, 60 A.L.R. 475], where it is stated: "Where one, in the conduct and maintenance of an enterprise lawful and proper in itself, deliberately does an act under known conditions, and, with knowledge that injury may result to another, proceeds, and injury is done to the other as the direct and proximate consequence of the act, however carefully done, the one who does the act and causes the injury should, in all fairness, be required to compensate the other for the damage done."

The basic question presented is whether or not an absolute liability exists in the case of a constructive trespass, or whether such liability only exists in this state when the defendant engages in an extrahazardous activity or commits an intentional or negligent trespass. ▮ At common law the action of trespass was limited to a direct invasion of property. In such action the defendant was held strictly liable for all damages regardless of negligence. But where, as here, the invasion was indirect or constructive the form of action was on the case. In such an action proof of negligence and improper intent were essential. (Prosser on Torts, 2d ed., pp. 54 to 56.)

▮ This distinction between direct and indirect invasions is not recognized in this state. In *Coley* v. *Hecker*, 206 Cal. 22, 28 [272 P. 1045], it was said that the "trend of the decisions of this court is generally in accord with the doctrine, whenever the question has come before it, that trespasses may be committed by consequential and indirect injuries as well as by direct and forcible injuries." ▮ Vibrations, under certain circumstances, can constitute a trespass. (*McNeill* v. *Redington*, 67 Cal.App.2d 315 [154 P.2d 428].) In *McKenna* v. *Pacific Elec. Ry. Co.*, 104 Cal.App. 538 [286 P. 445], the

plaintiff's property was damaged by vibrations caused by the blasting operations of defendant. The court said (p. 543): "We see no reason for differentiating between responsibility for damage done by physical projectiles or missiles and responsibility for damage done by vibration or concussion." (See generally *Robinson* v. *Black Diamond Coal Co.*, 57 Cal. 412 [40 Am.Rep. 118]; *McGrath* v. *Basich Brothers Const. Co.*, 7 Cal.App.2d 573 [46 P.2d 981]; *Colton* v. *Onderdonk*, 69 Cal. 155 [10 P. 395, 58 Am.St.Rep. 556].)

The real question involved is not whether there is a distinction between direct or indirect trespass, in this state, because there is not, but what the rule of liability in such cases is. Does California apply the rule of strict liability as to all trespasses, or has California imposed liability only for intentional trespasses and trespasses caused by reckless, negligent or extrahazardous activities? The Restatement of Torts has clearly adopted the latter rule. Section 158 provides:

"One who intentionally and without a consensual or other privilege

"(a) enters land in possession of another or any part thereof or causes a thing or third person so to do . . . is liable as a trespasser to the other irrespective of whether harm is thereby caused to any of his legally protected interests."

Section 165, and several of the comments to the section, provide:

"One who recklessly or negligently, or as a result of an extra hazardous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land, to the possessor thereof or to a thing or a third person in whose security the possessor has a legally protected interest.

"Comment a. To come within the rule stated in this Section, the conduct of the actor either must involve an unreasonable risk of invading the possessor's interest in his exclusive possession of the land or some other interest connected therewith or must be caused by an extra hazardous activity carried on by the actor which, although carefully carried on, involves a risk of invading such an interest. . . ."

"Comment d. The rules which determine whether the actor's conduct is reckless or is negligent as involving an unreasonable risk of an invasion of the other's interest in the exclusive possession of land are the same as those which

determine the recklessness or negligence of conduct as threatening bodily harm. . . .

"The rules which determine whether an activity carried on by the actor is so especially hazardous that it must be carried on at the risk of answering for any intrusion on another's land caused by the miscarriage of the activity are the same as determine the ultra hazardous character of an activity, the miscarriage of which is likely to result in bodily harm. . . .

"Comment e. There is this difference between liability for harm caused to the possessor of land by a negligent or reckless intrusion thereon or by an intrusion resulting from the conduct of an extra hazardous undertaking and the liability for harm so caused otherwise than upon land in the other's possession. In the latter case, the actor's conduct is not negligent unless there is an unreasonable risk of causing some such harm as that which the other sustains. In the situation dealt with in this Section, the actor's conduct is sufficient to subject him to liability for any harm which is done to the possessor if such conduct contains an unreasonable risk of resulting in an intrusion upon the possessor's land. If this is the case, the actor is liable for any harm of the sort stated in this Section (see Comment c) of which his intrusion or any act done by him while he is intruding is a legal cause, although there was no antecedent probability that his conduct would so result. The fact that he has wrongfully intruded, even though the wrong is one of negligence rather than intention, makes the actor liable for any such harm done to the possessor of land while the actor is thereon. In short, it is not essential that the harm caused to the possessor of the land was reasonably to be expected by the actor or that it was reasonably to be expected as a result of a trespass on the land. It is sufficient that there is an intrusion on another's land caused either recklessly, negligently, or as a result of an extra hazardous undertaking, and that as a legal consequence of such intrusion, harm of the required sort has come about, however, antecedently improbable. . . ."

Section 166 provides: "Except where the actor is engaged in an extra-hazardous activity, an unintentional and non-negligent entry on land in the possession of another or causing a thing or third person to enter the land, does not subject the actor to liability to the possessor, even though the entry

causes harm to the possessor or to a thing or third person in whose security the possessor has a legally protected interest.''

An examination of the California cases discloses that while no case seems, in so many words, to have adopted the rule of the Restatement, the overwhelming majority of cases where liability has been imposed fit within the rule of the Restatement, or within the rule of *Fletcher* v. *Rylands*. The foundation case is *Green* v. *General Petroleum Corp.*, 205 Cal. 328 [270 P. 952, 60 A.L.R. 475]. There the defendant was engaged in drilling for oil. He capped the well just before hitting a gas pocket. Without negligence on his part the well ''blew off,'' throwing much debris on plaintiff's property. The Supreme Court imposed absolute liability on the defendant. The court relied on the principle stated in section 3514 of the Civil Code that ''One must so use his own rights as not to infringe upon the rights of another,'' and stated ''. . . it is unreasonable and unlawful for one owner to physically invade the land of another. There can be no *damnum absque injuria* where there is such a trespass.'' (P. 335.) Obviously, the case involved an extrahazardous activity on the part of the defendant. While the Green case did not so state, most of the cases citing it have so interpreted it. (*Boyd* v. *White*, 128 Cal.App.2d 641, 654 [276 P.2d 92]; *Shanander* v. *Western Loan & Bldg. Co.*, 103 Cal.App.2d 507, 510 [229 P.2d 864]; *Daniels* v. *McPhail*, 93 Cal.App.2d 479, 482 [209 P.2d 19]; see discussion in 5 So.Cal.L.Rev. 263.)

There are other trespass cases in California where strict liability has been imposed. All of them involved a nuisance, or some extrahazardous activity, or the bringing of a foreign substance on the land which escaped. Thus, *Nola* v. *Orlando*, 119 Cal.App. 518 [6 P.2d 984], and *Parker* v. *Larsen*, 86 Cal. 236 [24 P. 989, 21 Am.St.Rep. 30], involved liability for escaping waters. *McGrath* v. *Basich Brothers Const. Co.*, 7 Cal.App.2d 573 [46 P.2d 981]; *Colton* v. *Onderdonk*, 69 Cal. 155 [10 P. 395, 58 Am.St.Rep. 556]; *Munro* v. *Pacific Coast Dredging etc. Co.*, 84 Cal. 515 [24 P. 303, 18 Am.St.Rep. 248], and *McKenna* v. *Pacific Elec. Ry. Co.*, 104 Cal.App. 538 [286 P. 445], involved damages caused by blasting operations, which, at least in an urban area, involves an extrahazardous activity. (But see *Houghton* v. *Loma Prieta Lbr. Co.*, 152 Cal. 500 [93 P. 82, 14 Ann.Cas. 1159, 14 L.R.A.N.S. 913], where the court held that in isolated areas the defendant could be liable for damages caused by an explosion only if

he were negligent; see for a good discussion of the general subject 19 Cal.L.Rev. 94.)

Plaintiff places great reliance on *McNeill* v. *Redington*, 67 Cal.App.2d 315 [154 P.2d 428], claiming that that case stands for the rule that a defendant is absolutely liable for damages caused by any trespass, regardless of the nature of the activity. The case stands for no such proposition. There the defendant operated a drop forge 24 hours a day. This caused substantial damage to the nearby home owners. The conduct of the forge was not a nuisance because the zoning law permitted its operation in the area involved. The trial court found that methods used by defendant's operations were "reasonable and necessary," but nevertheless imposed liability for damages on the theory of trespass. While the court does not spell out the precise basis of liability, it is obvious that, under the facts, the case involved either an intentional or negligent trespass, because as a reasonable man defendant knew or should have known that his operations would cause the adjoining properties to be subjected to vibrations. All of the cases cited by the appellate court fall within the rule of the Restatement.

From the foregoing we conclude that the rule of the Restatement is sound, and that in this state there is no liability for a trespass unless the trespass is intentional, the result of recklessness or negligence, or the result of engaging in an extrahazardous activity.

Now how do these rules apply to the facts of the instant case? Clearly, no negligence is here involved. Plaintiff admits that there is no evidence of negligence. Equally clear it is that no extrahazardous activity is involved. The Restatement of Torts, section 520, defines such an activity as one where the act

"(a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and

"(b) is not a matter of common usage."

California has generally approved that classification. (*Boyd* v. *White*, 128 Cal.App.2d 641, 649 [276 P.2d 92].)

Obviously, the construction of garages in an apartment house, there being no evidence that the methods employed were unusual, is a "matter of common usage."

The only remaining question is whether, on the evidence of the acts here shown to exist, the case should have gone to the jury on the question of whether the trespass was inten-

tional, or one engaged in knowing that the work would necessarily invade the plaintiff's property rights. The defendant did not know, prior to the accident, that the plaster was weakened in plaintiff's apartment. She had no reason to believe that the construction of basement garages would cause plaster to fall. No plaster fell in any other apartment. No one complained to defendant, not even plaintiff, about the vibrations. Under the evidence the only reason the plaster fell was that it had been in a cracked condition for a long period of time. It was apparently in such a condition that the slightest vibration would cause it to fall. Defendant did not know this. It is true that plaintiff complained to one of the workmen about the vibrations, and showed him the cracked plaster, but there is no evidence of the status of the workman, or of his authority. There is no evidence that he told defendant of the occurrence or that it was his duty to do so. Even if it be inferred that Folino, the contractor, was an employee of defendant,* so that his acts would be imputed to defendant, certainly a complaint to one of Folino's workmen cannot be sufficient to impute knowledge to defendant. Without such knowledge, under the admitted facts, there could be, as a matter of law, no liability.

For the foregoing reasons the judgment is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 6, 1956.

---

*The evidence is very scant on the point, and probably the only reasonable inference is that Folino was, as a matter of law, an independent contractor. (See *Johnson* v. *Helbing*, 6 Cal.App. 424 [92 P. 360]; *Green* v. *Soule*, 145 Cal. 96 [78 P. 337].)