## GEORGIA HOME INS. CO. v. MEANS.

### No. 13248.

United States Court of Appeals Fifth Circuit.

Feb. 7, 1951.

Rehearing Denied March 10, 1951.

Austin Y. Bryan, Jr., David Bland, Houston, Tex., for appellant.

Lamar Cecil, Beaumont, Tex., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

Brought under the "blowout" provision[1] of an insurance policy, TR–2293, the suit was for loss and damage to an oil rig and equipment.

The claim was that while plaintiff was engaged in drilling an oil well with the insured rig, a "blowout", as that term is defined in the policy, occurred, causing loss and damage to the equipment insured under the policy to the extent of $40,483.38.

The defenses, in addition to a denial, were affirmative pleas: (1) of no blowout, as that term is defined[2] in the policy; (2) breach of clause 11 of the policy, "Impairment of Liability"; and (3) breach of clause 7, "Benefit of Insurance".

Tried fully to the court without a jury, there were findings of fact[3] and conclu-

---

1. "In consideration of an additional premium of $ included, being at the rate of $ included, this policy is extended to cover the following equipment at locations as described against loss or damage caused by Blowout and Cratering.

    Equipment          Location
      As described herein."

2. "The term 'Blowout' shall be defined as a sudden expulsion of drilling fluid (mud, water and sometimes oil) followed by an uncontrolled flow of oil, gas or water from an uncompleted well that occurs when the pressure of oil, gas or water entering the hole at some depth is greater than the pressure exerted by a column of drilling fluid in the well."

3. These were in substance:

1. That on Nov. 30, 1947, defendant issued to plaintiff its policy of insurance No. TR–2293.

2. That by endorsement of even date it insured plaintiff against loss or damage to certain designated drilling equipment of plaintiff as it is defined in the policy.

3. That early in the morning of August 10, 1948, the plaintiff, an oil well drilling contractor, was engaged in drilling an oil well for the Sun Oil Company under the terms of a written contract with said Sun Oil Company.

4. That under such written contract the primary depth of the well was fixed at 10,900 ft., and upon August 10, 1948, while drilling said well at a depth of 10,612 ft., or above the primary depth called for in said drilling contract and when said well was an uncompleted well, there was encountered an unexpected and unusual gas pressure, such pressure being at the surface approximately 6500 pounds per square inch and at the bottom of the hole in excess of 8000 pounds per square inch.

5. That the well was equipped with three Cameron Preventors of 6000 lbs. test and necessary valves, bleeder lines, spools, rams, chokes, et cetera, to make a complete preventor system in every respect fully complying with all warranties in the policy regarding blowout preventor equipment.

6. That on that morning there was a rapid expulsion of drilling fluid from said uncompleted well, followed by an uncontrolled flow of gas and oil from said well, which said rapid expulsion occurred when the pressure of the oil, gas or water entering the hole at some depth was greater than the pressure exerted by the column of drilling fluid in the well, and that this was a blowout within the meaning of said term as defined in the policy of insurance sued upon and that such blowout was the proximate cause of the loss of plaintiff's drilling equipment sued for herein.

7. That at all times material hereto the members of the drilling crew acted in a careful and prudent manner and did everything that reasonable and prudent operators would have done to save the well and to prevent damage to the equipment involved, the surrounding land, and the general public, but that notwith-

sions of law [4] in plaintiff's favor, and defendant has appealed.

Here, placing its main reliance upon its first ground, the failure of the proof to show a blowout with resulting loss, appellant argues also that plaintiff's drilling contract and his dealings with respect to it with the Sun Company constituted a violation of clauses 7 and 11, and, finally, that of the damage recovery against it, $7,345.66 for expenses incurred at defendant's request in salvaging the pipe and tool joints was not properly recoverable.

On its first point, it plants itself squarely on "the warranties by the assured as to oil drilling safety measures", including (a) master gate drilling valve, and (b) blowout preventor. So planting, it argues not that these warranties were breached but that, taking the provisions as to them in connection with the definition of blowout, the policy makes it clear that unless the force "of the pressure of oil, gas or water entering the hole" is sufficient to unseat or break violently through the blowout preventor, there is no blowout.

In amplification, it argues that the controlling provision in the "blowout" definition is this, "followed by an uncontrolled flow of oil, gas, or water", and that it cannot be said that this has occurred in any well where the blowout preventors are working and the oil, gas or water has not broken through, or erupted violently from, them.

So arguing, it insists that, since it is undisputed that the preventors did hold and that there was no wild eruption breaking through them, but the damage occurred from a bridging over in the hole and the mere inability to continue to make hole, the facts found by the district judge did not constitute a blowout.

An additional argument made by it is that if there was a blowout within the policy definition, it was of such a small and minor nature that the loss sustained did not flow from it but from the bridging over of the hole, not because of the blowout but merely because of the inability to continue to make hole, a risk not insured against in the policy. It insists, therefore, that the findings of the district judge, that a blowout occurred and that this caused plaintiff's loss, are clearly erroneous. We cannot agree.

We think it plain, on the contrary, that defendant's position is the clearly erroneous one. If sustained, it would put a premium on careless operation and the use of minimum measures of security, and would be in direct contradiction of the undisputed facts and the policy definition.

■ Here plaintiff not only complied with the minimum safety measures required under the warranties, but far exceeded

standing the efforts of said drilling crew and other emergency help employed said crew was never able to restore circulation of the drilling fluid in the well and that within a comparatively short time the hole or bore of the well bridged over and the drill pipe became stuck, and that the blowout occurring on August 10, 1948, was not caused or contributed to by the negligent or intentional act of anyone.

8. That the total value, less five percent, of the items lost in the blowout was $31,461.83, and that the reasonable and necessary expenses incurred were $7,345.66.

4. These were in substance:

1. That plaintiff did not at any time material hereto breach or violate any of the clauses, conditions or warranties of the policy of insurance sued upon herein and particularly did not breach Sections 7 and 11 of said policy relied upon by defendant to work a forfeiture of said

policy by the execution of the drilling contract with Sun Oil Co. of June, 1948.

2. That on August 10, 1948, LaPleau Estate Well No. 1 sustained a blowout within the intent and meaning of the definition of said term as defined in the policy of insurance sued upon herein.

3. That the blowout of August 10, 1948, occurred under circumstances which would create no liability against any third person, firm or corporation either at law or in equity and that the defendant under the undisputed facts in this case could not have been deprived of any rights of subrogation against Sun Oil Company or any other person, firm or corporation by any provision of the drilling contract between plaintiff and Sun Oil Company.

4. That plaintiff is entitled to recover judgment for $38,807.49 with interest at the legal rate from the date of judgment.

them by using, instead of one, three blow-out preventors. Appellant's contention, in effect that because plaintiff did so, and thereby prevented a much heavier loss from a more excessive blowout and a possible cratering, he defeated his recovery, will not stand up. As found by the court upon the undisputed evidence, there was a sudden expulsion of drilling fluid followed by an uncontrolled flow of oil, gas and water, in that the pressure of the gas entering the hole was, and, despite all efforts to prevent it, continued to be, greater than the pressures exerted by the heavy column of drilling fluid forced down into the well. It was this differential in the gas pressure which, causing the blowout, in turn caused the bridging over of the well and the loss to plaintiff.

It is quite true that if the preventors had not worked, there would have been a more spectacular blowout with oil, mud, and water shooting high into the air, and perhaps destroying the derrick and causing the well to crater. But this is immaterial. The pressure from the gas entering the hole and causing the sudden expulsion of fluid was, and continued to be, so great that it defeated all efforts to overcome the pressure and continue to make hole notwithstanding the pumping in of a great weight of drilling fluid, 200,000 pounds. This pressure and the uncontrolled flow of fluid which it caused finally resulted in the bridging over of the hole and the loss for which plaintiff sues.

The district judge was right in concluding that there was a blowout and that it caused the loss for which he gave plaintiff judgment.

 Appellant's other points, the claimed breach of the clauses 7 and 11 of the policy, are no better taken. It is quite clear that the record furnishes no basis whatever for these claims and that the district judge was right in concluding that nothing in the drilling contract or in the conduct of plaintiff and the Sun Company with reference thereto in any manner breached any of the obligations of the policy or diminished or affected any of defendant's rights thereunder.

 Finally, as to the item of recovery for costs and expenses incurred in salvaging the pipe, the district judge was right in concluding that these costs were incurred in strict accordance with the provisions of the policy and at defendant's request, and were properly allowed as part of plaintiff's recovery.

The judgment was right. It is Affirmed.