245 F.2d 831
 ANDERSON-PRICHARD OIL CORPORATION, a corporation, Appellant,
v.
R. L. PARKER, a sole trader, d/b/a Parker Drilling Company, Appellee.
R. L. PARKER, a sole trader, d/b/a Parker Drilling Company, Cross-Appellant,
v.
ANDERSON-PRICHARD OIL CORPORATION, a corporation, Cross-Appellee.
 No. 5462.
 No. 5463.
 United States Court of Appeals Tenth Circuit.
 May 16, 1957.
 
 Ross L. Malone, of Atwood & Malone, Roswell, N. M., and Frank Bezoni of Perkins & Bezoni, Midland, Tex., for appellant and cross-appellee.
 C. H. Rosenstein, of Rosenstein, Fist & Mesirow, Tulsa, Okl., and John D. Robb, of Rodey, Dickason, Sloan, Mims & Akin, Albuquerque, N. M., for appellee and cross-appellant.
 Before HUXMAN, PICKETT and LEWIS, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 The plaintiff brought this action to recover an amount claimed to be due on a written contract to drill an oil and gas well for the defendant in Lea County, New Mexico. During the course of the drilling, natural gas was encountered in large quantities which caused what is termed in the oil and gas industry a "blowout", resulting in substantial costs and additional labor to both the plaintiff and the defendant. After the well was brought under control, drilling was resumed and the well completed as a producer. During the course of the trial it was stipulated that plaintiff was entitled to $191,990.58 for having drilled the well. It was also agreed that if the plaintiff was entitled to additional compensation for services performed in connection with the blowout, the amount was $109,136.93, and that defendant would be entitled to recover $157,789.79 if the issues were determined in its favor on a counterclaim. The case was tried to the court and a jury, resulting in a verdict in favor of the plaintiff, and judgment was entered for $301,127.51, plus attorney fees in the sum of $7,500,[1] and interest from the date of the entry of the judgment. Defendant appeals, and plaintiff cross-appeals only on the question of interest.
 
 
 2
 The rights of the plaintiff are controlled by the contract provisions. The defendant insists that plaintiff's evidence establishes that the blowout and loss of control of the well was caused by conditions for which, under the terms of the contract, the plaintiff assumed the risk, and the court should have directed a verdict for the defendant. The pertinent evidence discloses that the well had been drilled to about 8350 feet by June 21, 1954. Prior to that time, as required by the contract, defendant had installed and cemented 368 feet of 13 3/8 inch surfacing casing, and approximately 3600 feet of 9 5/8 inch intermediate casing. The cementing of the casing was an obligation of the defendant. An attempt was made to circulate cement from the bottom of the intermediate casing to the ground surface. For some unknown reason the circulation would not rise above 1140 feet below the ground surface. The defendant decided to perforate the casing immediately above the cement and complete the cementing job through the perforations. Plaintiff had encountered some unfortunate experiences with perforated casings, and advised the defendant that perforation of the casing should be avoided and that he did not favor such methods.
 
 
 3
 When gas was unexpectedly encountered in the Devonian structure at about 8350 feet, the bottom hole gas pressure overcame the hydrostatic weight of the column of drilling mud in the well, and gas began to rise toward the surface, forcing the drilling mud out of the top of the well. It became necessary to activate the blowout prevention mechanism and close the hole. Shortly thereafter gas was observed coming up outside the casing. A bleedline was opened to relieve the pressure and when a valve on the bleedline eroded away, the well was out of control. The plaintiff testified that the bubbles of gas coming upon the outside of the casing indicated to him that gas was escaping from the inside of the casing and coming up on the outside, which condition would cause dangerous cratering, if continued. He said that if there had been no escaping gas outside the casing, the blowout preventer would have held and there would have been no need to open the bleedlines. Plaintiff's father, an oldtimer in the oil and gas well drilling business, testified that in his opinion the escaping gas came through the perforations.
 
 
 4
 The contract was on defendant's printed form, with several typewritten provisions inserted. One of these typewritten provisions required defendant to pay plaintiff at day-work rates after twenty-four hours for overcoming blowout conditions. It is under this provision of the contract that it is agreed that plaintiff was entitled to recover $109,136.93, unless such recovery is prevented by his conduct in handling the well during blowout conditions or the assumption of risk clause in the contract.
 
 
 5
 The contract provided that the defendant was to furnish all casing, liners, tubing, permanent production equipment, cement, cementing service, and all special services such as perforating, electric logging, and drillstem testing. The provision of the contract upon which the defendant contends it was entitled to a directed verdict reads as follows:
 
 
 6
 "* * * All casing, tubing or other materials, equipment, appliances or services furnished by Owner shall be examined and checked by Contractor before using or accepting the same. If any defects or shortage be found rendering such material unfit or insufficient for use or such services unfit for acceptance, Contractor shall notify Owner and Owner will immediately remedy the situation. Should Contractor fail to so notify Owner or proceed with the use or acceptance of such materials or services, Contractor shall assume all risks and responsibility in connection with the use or acceptance of such materials, equipment, appliances and services furnished by Owner."
 
 
 7
 The trial court adopted defendant's interpretation of this clause and instructed the jury that it was applicable to the casing perforation, to the recementing of the casing, and to the testing of the cement job. The jury was told that if the condition of the well casing, including the perforations, cement job and testing thereof, was the proximate cause of the blowout and resulting damages and that plaintiff had drilled ahead after defendant had furnished these materials and services, it thereby assumed the entire risk and responsibility of the blowout and that defendant was entitled to a verdict in its favor. The jury was also instructed that the plaintiff was entitled to a verdict if it encountered a high-pressure gas formation with a resulting blowout and loss of control of the well due to elements or other causes beyond the control of the plaintiff. The effect of the instructions was to limit recovery by the plaintiff under the blowout clause to a situation where the blowout was caused by conditions which were unavoidable or where the cause was unknown.
 
 
 8
 Defendant urges that the plaintiff's own testimony establishes that the blowout and resulting conditions were caused by the perforations in the intermediate casing and a faulty cement job, and that plaintiff is bound by this evidence. It has been held that when a party testifies to positive and definite facts which, if true, would defeat his right to recovery or fix liability upon him, he is bound by this testimony even though there is evidence to the contrary. Annotation 50 A.L.R. 979, 980; Annotation 80 A.L.R. 624; 169 A.L.R. 798; Dayvault v. Baruch Oil Corp., 10 Cir., 231 F.2d 413; L. P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co., 7 Cir., 253 F. 914, certiorari denied 248 U.S. 580, 39 S.Ct. 22, 63 L.Ed. 430. The testimony of neither the plaintiff nor his father constituted an admission of fact which would bring it within the foregoing rule. Although they appeared to be convinced that the gas leak was through the perforations, they expressed only their opinions, which did not have the effect of a statement of fact. The facts are not peculiarly within their knowledge, but were of such nature that they could be mistaken, and are no more conclusive than the testimony of any other witness. The evidence was not such that the court was compelled to accept it as true. Kanopka v. Kanopka, 113 Conn. 30, 154 A. 144, 80 A.L.R. 619; King v. Spencer, 115 Conn. 201, 161 A. 103; State ex rel. Ernest Fleckenstein Brewing Co. v. District Court, 134 Minn. 324, 159 N.W. 755; Annotations 80 A.L.R. 624; 169 A.L.R. 803; Am.Jur., Cum.Supp., 1956, Evidence, § 1181, note 8.
 
 
 9
 It is apparent that the jury believed that the blowout and loss of control of the well were caused by factors other than the alleged failure of the perforated casing and the cementing job. There is substantial evidence in the record to support the conclusion that the unfortunate incident was caused by conditions other than those for which plaintiff had assumed the risk. There was evidence that the well was out of control when defendant's Nordstrom valve on the bleedline eroded away, and that the well could have been controlled despite the condition of the casing if the Nordstrom valve had not failed. Perforation of the casing is common practice during the drilling of an oil and gas well, and there was evidence that the perforation and cementing job performed by defendant was done in the usual, customary and normal manner. Defendant's general superintendent of production testified that the well was out of control only when the blowout preventer rams were opened, which occurred the day after the blowout. There was evidence from which it could be inferred that an unexpected, excessive, high-pressure gas pocket was encountered at the bottom of the well and the drilling mud weight was insufficient to prevent the blowout. The drill pipe through which mud could be forced into the bottom of the well was severed either through closing of a master valve or by the action of escaping gas. There was a conflict in the evidence as to whether the weight of the drilling fluid was sufficient to control the well under the circumstances. A specialist in bringing wild wells under control testified that it was not uncommon for a well to get out of control; that causes of such condition are so numerous and so difficult to determine that he is not generally able to determine the condition which produces wild wells, and that he was unable to determine the condition which caused this particular well to get out of control and that the escaping gas outside the casing could have come from different sources. There was ample evidence from which the jury could have found that the perforations and recementing job caused the loss of control of the well, but it did not so find.
 
 
 10
 Defendant complains of the court's refusal to give a requested instruction which included language to the effect that under the contract the defendant assumed the risk of defects in the weight of the drilling mud and the Nordstrom valve on the bleedline. The contract provides that the defendant shall furnish all special type mud required for drilling, and plaintiff shall use mud "of weight and quality at all times satisfactory to the owner". There is no evidence that any drilling mud was used which was unsatisfactory to defendant. During the course of the trial the defendant undertook to prove through its chief reservoir engineer that the mud furnished was of sufficient weight to create the necessary pressure to prevent gas from entering the well bore. The quality of the mud and its weight was within the exclusive control of the defendant. As to the Nortstrom valve, there was no evidence that it was defective, and there was no necessity for the plaintiff to notify the defendant as to its condition. The valve failed, not because of defects, but because the force of escaping gas destroyed it.
 
 
 11
 The defendant also assigns as error the giving of instructions relating to unavoidable accidents and the liability of the defendant if the jury found that the blowout was caused by the entering of a high-pressure gas formation resulting in the blowout which could not have been prevented by plaintiff. The instructions related to matters within the issue of the case. Defendant's counterclaim alleged that the blowout resulted from the negligence of the plaintiff and its failure to drill the well in a good and workmanlike manner. One of the defenses to the counterclaim was that of unavoidable accident. The court properly instructed the jury on the subject of negligence with reference to the counterclaim. There is substantial evidence in the record from which it could be found that the blowout was due to the action of elements beyond the control of plaintiff. It may be that this condition was not within the technical definition of an "unavoidable accident", but the obvious purpose of the instruction was to inform the jury that there was no liability on the part of plaintiff on the counterclaim if defendant's damage was caused through no fault of plaintiff or resulted from conditions beyond his control. We have no doubt that the jury fully understood its purpose. Neither does it appear that the court erred in giving an instruction to the effect that the plaintiff was not liable if, in the course of drilling the well, a high-pressure gas formation was encountered resulting in a blowout and subsequent loss of control of the well due to the elements or to any other cause beyond the control of the plaintiff. Plaintiff was not an absolute guarantor or insurer against any contingencies which might occur during the course of drilling the well. He did not assume the risk of any condition occurring which would cause a blowout. The liability was fixed by the terms of the contract in addition to which there would be liability for negligence. Plaintiff's assumed risk was only of unfit or insufficient casing, tubing, or other materials, equipment, appliances or services furnished by the defendant. If plaintiff assumed the risk of all conditions which might cause a blowout, there would have been no reason to insert the blowout clause into the contract. A "blowout", as used in the oil industry, is generally defined as a condition in which a well builds up sufficient gas pressure at the bottom of the hole to overcome the hydrostatic weight in the well, and forces its way to the ground surface. Central Manufacturers Mut'l Ins. Co. v. Elliott, 10 Cir., 177 F.2d 1011; Green v. General Petroleum Corp., 205 Cal. 328, 270 P. 952, 60 A.L.R. 475. The word "element", as used in the instruction, would include natural gas. Black's Law Dictionary, 4th Ed.; Bouvier's Law Dictionary, Rawle's Third Revision, p. 1000; 14 Words & Phrases, Elements, p. 347.
 
 
 12
 Finally the defendant contends that the court erred in instructing the jury that if the sole and proximate cause of the blowout was the failure of the mud logging crew to advise plaintiff of gas or oil shows which the mud logging crew knew had been encountered prior to the blowout, or the failure of the mud logging crew and the geologist to discover and advise the plaintiff that it was drilling into the Devonian structure prior to the blowout, or that the failure of the Nordstrom valve on the bleedline was the sole and proximate cause of losing control of the well and of resulting damages, the verdict should be against the defendant and in favor of the plaintiff on the issue of negligence raised in the counterclaim. It is urged that this instruction is confusing and inconsistent with the instruction that by the terms of the drilling contract the plaintiff assumed all risks and responsibilities in connection with the use of all equipment, materials and services theretofore furnished by the defendant. This instruction is specifically limited to the issue of negligence presented by the counterclaim, a matter not governed by the contract. Being limited to that issue, there is no inconsistency with instructions which relate solely to the contract provisions.
 
 
 13
 We are satisfied that the instructions, when considered as a whole, fairly presented to the jury the issues of a complicated state of facts, and there was no prejudicial error.
 
 
 14
 The remaining question has to do with the allowance of interest. The trial court allowed no interest prior to the date of the judgment. The plaintiff contends the action was one for breach of contract, and the recovery was for amounts due under the contract, therefore he was entitled to interest from February 8, 1955, the date when the payments were due. We agree with this contention. The contract provided that the plaintiff should be paid for the drilling of the well. It was stipulated that this amount was $191,990.58. The contract also provided that in the event of a blowout, after a period of twenty-four hours the plaintiff was to be paid at the applicable day-work rate. The parties agreed that if plaintiff was entitled to recover under this provision, the amount due was $109,136.93. The total sum due was clearly a contractual obligation, and for that matter, was computed under it by the parties. Amounts earned under the contract were payable thirty days after the completion of the well, but not less than ten days after receipt by the defendant of a proper billing. The well was completed January 8, 1955, and all amounts due were payable February 8, 1955. This amount was readily ascertainable by mathematical calculation by standards fixed in the contract. A failure to pay when due was a breach of contract, and plaintiff was entitled to interest at the legal rate from the time payment was due. Restatement, Contracts, § 337; Woolly v. Bishop, 10 Cir., 180 F.2d 188; J. P. (Bum) Gibbins, Inc., v. Utah Home Fire Ins. Co., 10 Cir., 202 F.2d 469; State Trust & Savings Bank v. Hermosa Land & Cattle Co., 30 N.M. 566, 240 P. 469; Independent School Dist. No. 65, Wagoner County v. Stafford, 208 Okl. 542, 257 P.2d 1092. The fact that defendant, in good faith, denies the claim or the breach of contract does not prevent the allowance of interest. Restatement, Contracts, § 337, comment (d); United States v. Stephanidis, D.C. E.D.N.Y., 41 F.2d 960; Hansen v. Covell, 218 Cal. 622, 24 P.2d 772, 89 A.L.R. 670; Lacy Mfg. Co. v. Gold Crown Mining Co., 52 Cal.App.2d 568, 126 P.2d 644; Texas Co. of Mexico, S. A. v. Roos, 5 Cir., 43 F.2d 1, certiorari denied 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 794.
 
 
 15
 The judgment is Affirmed except as to interest, which shall upon Remand, be allowed according to the view herein expressed.
 
 
 
 Notes:
 
 
 [1]
 Plaintiff's complaint sought the foreclosure of a lien for labor and materials furnished, and the attorney fee was allowed under New Mexico statutes. The allowance is not questioned in this appeal